UNITED STATES, Appellee

v.

Daniel L. ELLIS, Staff Sergeant
U.S. Air Force, Appellant

No. 09-0382

Crim. App. No. 37113

United States Court of Appeals for the Armed Forces

Argued November 9, 2009

Decided February 23, 2010

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and STUCKY and RYAN, JJ. joined.  BAKER, J., filed
a separate opinion concurring in the result.

Counsel


For Appellant:  Major Michael A. Burnat (argued); Major Shannon
A. Bennett (on brief).

For Appellee:  Major Coretta E. Gray (argued); Colonel Douglas
P. Cordova, Lieutenant Colonel Jeremy S. Weber, and Gerald R.
Bruce, Esq. (on brief).

Military Judge:  Gregory Gaudette


**This opinion is subject to revision before final publication.**

United States v. Ellis, No. 09-0382/AF

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Daniel L. Ellis entered guilty pleas to a number of offenses involving his inappropriate conduct with a young girl and an individual he believed to be a young girl.[1] A military judge accepted Ellis's pleas and sentenced him to eleven years of confinement, forfeiture of all pay and allowances, reduction to the grade of E-1, and a dishonorable discharge. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed the findings and the sentence. United States v. Ellis, No. ACM 37113, 2008 CCA LEXIS 507, 2008 WL 5192458 (A.F. Ct. Crim. App. Dec. 12, 2008) (unpublished).

"In a sentencing hearing, an accused's potential for rehabilitation is a proper subject of testimony by qualified experts." United States v. Stinson, 34 M.J. 233, 238 (C.M.A. 1992) (citing Rule for Courts-Martial (R.C.M.) 1001(b)(5)).

> Mil.R.Evid. 702-705 and 403 operate to establish a simple four-part test for admissibility of expert testimony: (1) Was the witness "qualified to testify as an expert"? (2) Was the testimony "within the limits of [the expert's] expertise"? (3) Was the "expert opinion based on a sufficient factual basis to make it relevant"?, and (4) "Does the danger of unfair prejudice created by the testimony outweigh its probative value?" United States v. Stinson, 34 M.J. 233, 238 (C.M.A. 1992); United States v. Neeley, 25

---

[1] Ellis was convicted of two specifications of indecent acts on divers occasions with a child, one specification of possession of child pornography, one specification of adultery, four specifications of communicating indecent language to a child, one specification of carnal knowledge, and two specifications of attempted communication of indecent language to a child.

United States v. Ellis, No. 09-0382/AF

> M.J. 105, 107 (C.M.A. 1987), cert. denied, 484 U.S.
> 1011 (1988).

United States v. Banks, 36 M.J. 150, 161 (C.M.A. 1992).

We granted review in this case to determine whether the military judge abused his discretion by allowing the Government's expert to testify as to Ellis's potential for rehabilitation, specifically his risk of recidivism.[2] We hold that the military judge did not abuse his discretion in allowing the expert opinion testimony and therefore affirm the Air Force Court of Criminal Appeals.

## Background

Ellis was stationed at Elmendorf Air Force Base near Anchorage, Alaska. In December 2004 he met VC, then a thirteen-year-old female seventh grader, in an Internet chat room operated by Yahoo. During the course of their chats, VC gave Ellis her name and age and told him that she lived in Anchorage. Ellis continued these chats with VC almost every other day, which ultimately led to a meeting with VC and her mother at an Anchorage restaurant. During that meeting, VC's mother told Ellis that VC was only thirteen years old.

About two weeks later, Ellis went to VC's home and again visited with VC and her mother. VC's mother left the house and Ellis and VC participated in what VC described as a "make out session." At some point later, Ellis met VC's mother at her

---

[2] United States v. Ellis, 68 M.J. 145 (C.A.A.F. 2009) (order granting review).

house and they engaged in sexual intercourse. During this period Ellis continued to have online chats with VC about the sexual things he would like to do to her. He also continued his visits to her house and during these visits Ellis began to have intimate sexual contact with VC, which ultimately led to sexual intercourse. On one occasion Ellis took VC to the parking lot of a local elementary school, where he digitally penetrated her vagina while sitting in his car.

In October 2005, Ellis was transferred to Cannon Air Force Base in New Mexico, but he continued his Internet chats and sexual banter with VC. The sexual chat banter was eventually discovered and a search warrant obtained to search his home and personal computer in New Mexico. An analysis of the computer revealed a number of files containing child and adult pornography as well as chat logs between Ellis and VC and chat logs between Ellis and someone he believed to be a fourteen-year-old female named "Mandy." Actually "Mandy" was an Immigration and Customs Enforcement (ICE) officer conducting an Internet child pornography investigation who was posing as a child. The chats with the ICE officer contained indecent sexual banter and took place one month after the initial charges had been preferred against Ellis in the instant case.

Ellis entered into a pretrial agreement with the convening authority in return for his guilty pleas. During the presentencing phase of Ellis's court-martial, the prosecution

4

called an expert, Dr. Timothy Faye Branaman, to testify as to Ellis's risk for recidivism.  Following a series of questions concerning Dr. Branaman's qualifications and experience, and after his curriculum vitae was admitted into evidence, the trial counsel moved for his recognition as an expert in forensic psychology with a specialization in sexual offender assessments. The defense did not object to Dr. Branaman's qualifications or his recognition as an expert.

Dr. Branaman testified that the methodology he used in performing risk assessments of sexual offenders was an actuarial approach (statistical degree of probability) using an instrument entitled Static 99.[3]  The Static 99 was developed from statistical studies of men released from incarceration who had been convicted of sexual offenses.  The instrument grouped the risk factors of these men and compared those factors with the men's recidivism rates.  Dr. Branaman testified that the instrument was found to have a seventy percent rate of predictive validity and was well accepted within the scientific and medical communities.  Static 99 evaluates ten separate risk factors and assigns points depending on an individual's history

---

[3] Static 99 is an instrument that was developed and published in 1999 and is widely utilized in this field.  See United States v. McIlrath, 512 F.3d 421 (7th Cir. 2008), and cases cited therein. The term "static" refers to the historical factors the assessment evaluates.

as to each factor.[4] Dr. Branaman testified that there is a possible total of twelve points on the Static 99: zero and one reflect a low risk of recidivism; two and three reflect a moderate low risk; four and five reflect a moderate high risk; and six and above reflect a high risk.

Prior to rendering his opinion, Dr. Branaman testified that he had reviewed the charges and specifications against Ellis; reviewed the stipulation of fact; reviewed the forensic analysis of items seized from Ellis's computer and the chat logs; listened to the guilty plea inquiry by the military judge; and reviewed the rehabilitation options available at Cannon Air Force Base with confinement officials. Dr. Branaman did not conduct a personal interview of Ellis.

When the prosecution solicited Dr. Branaman's opinion as to Ellis's risk of recidivism, Ellis's defense counsel initially objected on the grounds that Dr. Branaman did not have a sufficient factual basis to make a relevant opinion. Following further questioning of Dr. Branaman by the military judge and counsel, the defense counsel also objected on the grounds that "the methodology from which [Dr. Branaman] is basing his opinion

---

[4] The ten risk factors in the Static 99 are: age of offender; stability of relationships; whether most recent conviction is for non-sexual violence; any prior conviction for non-sexual violence; number of sexual offense convictions or charges prior to most recent offense; has individual been sentenced on more than four prior occasions; convictions for non-contact sex offenses; any unrelated victims; any stranger victims; and any male victims.

as conducted, does not bear sufficient reliability to be admissible in this case." When asked by the military judge why it was not reliable, defense counsel stated it was because the test had a seventy to seventy-five percent accuracy rate and there were cases where the addition of dynamic variables skewed the accuracy of the Static 99 assessment. Finally, the defense counsel objected on the grounds that risk of recidivism was not proper testimony as to rehabilitation potential.

Following this discussion, the military judge stated that he would allow trial counsel to continue to lay a foundation for Dr. Branaman's expert opinion. Trial counsel immediately asked Dr. Branaman what his opinion was as to Ellis's risk of recidivism. Dr. Branaman responded that Ellis fell into the moderate high category for risk of recidivism, which reflected a thirty-eight percent chance of recidivism over a fifteen-year window of time. Dr. Branaman then went on to explain how he scored each of the ten factors for Ellis, which resulted in a total score of four points. There was no further ruling on the admissibility of Dr. Branaman's expert opinion on Ellis's risk of recidivism, nor was there a request for a ruling from either party.[5]

---

[5] The defense did object to two further questions for expert testimony from Dr. Branaman as to Ellis's treatment amenability and the potential victim impact on VC. The military judge sustained both of those objections.

7

Discussion

This Court reviews a military judge's decision to admit or exclude expert testimony over a defense objection for an abuse of discretion. United States v. Billings, 61 M.J. 163, 166 (C.A.A.F. 2005). A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable. United States v. Mackie, 66 M.J. 198, 199 (C.A.A.F. 2008). "'When judicial action is taken in a discretionary matter, such action can not be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors.'" United States v. Sanchez, 65 M.J. 145, 148 (C.A.A.F. 2007) (quoting United States v. Houser, 36 M.J. 392, 397 (C.M.A. 1993)).

Ellis argues that Dr. Branaman's limited record review did not provide him with a sufficient factual basis for his expert opinion as to his (Ellis's) risk of recidivism. Ellis recognizes that a personal interview is not necessary in order to give an opinion on the risk of recidivism.[6] He argues, however, that in the absence of a personal interview, Dr.

---

[6] See Stinson, 34 M.J. at 239 (citing Barefoot v. Estelle, 463 U.S. 880, 903-04 (1983); United States v. Hammond, 17 M.J. 218 (C.M.A. 1984)).

8

Branaman's preparation was insufficient as he did not review Ellis's personnel, mental health, and medical records, nor did he interview the victims.  He also argues that in using the Static 99 appraisal, Dr. Branaman improperly relied on the number of charges on the charge sheet and therefore the probative value of his testimony was marginal and substantially outweighed by the danger of unfair prejudice under Military Rule of Evidence (M.R.E.) 403.  Since the military judge did not perform a M.R.E. 403 balancing test on the record, Ellis argues that his ruling is not entitled to any deference.

The Government responds that Dr. Branaman's review of the records and his use of the Static 99 appraisal provided a sufficient factual basis for his expert opinion.  As to Ellis's allegation that Dr. Branaman's appraisal improperly relied on the number of the charges in the charge sheet, the Government notes that there was no evidence that the Static 99 appraisal was unreliable and, in any event, defense counsel effectively cross-examined Dr. Branaman on the limitations of the Static 99 appraisal when used with discretionary drafting of charges.

Expert Opinion Testimony on Risk of Recidivism

We initially note that Ellis does not challenge whether Dr. Branaman was qualified as an expert nor does he challenge that the testimony was within the limits of Dr. Branaman's expertise. He bases his challenge on the third Stinson/Banks factor, arguing that Dr. Branaman did not have a sufficient factual

basis to provide a relevant expert opinion on his risk of recidivism.

R.C.M. 1001(b)(5)(A) allows trial counsel to present opinion evidence as to an accused's potential for rehabilitation. R.C.M. 1001(b)(5) goes on to provide, in part:

> (B) Foundation for opinion. The witness or deponent providing opinion evidence regarding the accused's rehabilitative potential must possess sufficient information and knowledge about the accused to offer a rationally-based opinion that is helpful to the sentencing authority. Relevant information and knowledge include, but are not limited to, information and knowledge about the accused's character, performance of duty, moral fiber, determination to be rehabilitated, and nature and severity of the offense or offenses.

> (C) Bases for opinion. An opinion regarding the accused's rehabilitative potential must be based upon relevant information and knowledge possessed by the witness or deponent, and must relate to the accused's personal circumstances. . . .

Ellis does not assert that the material that Dr. Branaman did review was neither relevant nor related to Ellis's personal circumstances. Rather, he argues that Dr. Branaman should have reviewed additional materials. The issue here is not whether Dr. Branaman reviewed every record, it is whether the review he undertook provided him with "sufficient" information to offer a rationally based opinion that would be helpful to the sentencing authority.

There can be no hard and fast rule as to what constitutes "sufficient information and knowledge about the accused" necessary for an expert's opinion as to an accused's

United States v. Ellis, No. 09-0382/AF

rehabilitation potential.  In our prior decisions involving the

basis for an expert's opinion on an accused's potential for

rehabilitation, we have necessarily analyzed the sufficiency of

the facts and data on a case-by-case basis.  United States v.

Gunter, 29 M.J. 140, 141 (C.M.A. 1989) (reviewing data from a

drug rehabilitation file was sufficient basis); Stinson, 34 M.J.

at 235 (reviewing accused confession; observing the guilty plea

inquiry; reviewing the Office of Special Investigation report

and statements by the victim; reviewing the accused's mental

health records; and interviewing the victim was sufficient

basis); United States v. Scott, 51 M.J. 326, 328 (C.A.A.F. 1999)

(reviewing an accused's unsworn statement and two mental health

evaluations was sufficient basis); United States v. McElhaney,

54 M.J. 120, 134 (C.A.A.F. 2000) (interviewing the victim and

observations in court were not sufficient basis, also relying on

fact that expert was a child psychiatrist rather than a forensic

psychiatrist).

Dr. Branaman testified that the Static 99 appraisal was

specifically designed to do a risk assessment based upon a

review of records.  In addition to the Static 99 assessment, Dr.

Branaman reviewed the charges and specifications, the extensive

stipulation of fact,[7] the forensic analysis of the hard drive and

---

[7] The stipulation of fact in this case comprises seventeen pages
thoroughly detailing the underlying circumstances of the
offenses to which Ellis pleaded guilty, including:  a
chronological record of how Ellis developed his relationship

the listing of the images identified there, the chat logs, he listened to the guilty plea inquiry, and reviewed the rehabilitation options at Cannon Air Force Base.  We conclude that Dr. Branaman's review provided a sufficient basis for his opinion and the military judge did not abuse his discretion in allowing the testimony.

M.R.E. 403

Ellis goes on to argue that the criteria of the fifth factor in the Static 99 appraisal, which is based on the number of the accused's prior charges and convictions for sexual offenses, resulted in Dr. Branaman over-relying on the mere number of charged offenses.  As a result of this over-reliance, Ellis argues that the probative value of the expert testimony was substantially outweighed by the danger of unfair prejudice under M.R.E. 403.

Prior to this situation, Ellis had not been charged or convicted of any sexual offenses.  In the instant case Ellis was charged with eight specifications under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006):  two specifications of indecent acts with VC; one specification of possession of child pornography; one specification of adultery; and four specifications of indecent language with VC.  In an

with VC; excerpts from the chats between Ellis and VC and Ellis and "Mandy"; and descriptions of eight video files found on Ellis's computers that contained images of children engaged in sexually explicit conduct.

additional charge, he was charged under Article 120, UCMJ, 10 U.S.C. § 920 (2006), with carnal knowledge with VC.  In a second additional charge he was charged with two specifications of attempted indecent language with "Mandy" in violation of Article 134, UCMJ.

Factor five of the Static 99 appraisal takes into account the sexual offense charges and convictions prior to the "index" offense.  Dr. Branaman explained that the "index" offense is the last offense committed by the accused, which in this case was the most recent attempted indecent language charge with "Mandy." According to Dr. Branaman, all of the other charged offenses became "prior" charges for Static 99 purposes.  Under the Static 99 criteria for factor five, these "prior" charges resulted in Ellis receiving three points.  At the time of the appraisal, Ellis had not been convicted of any sexual offenses and he was therefore given zero points for prior convictions.  This resulted in a score of three points for factor five.  Ellis also received an additional point in factor eight because the victims were not related to him.  Ellis's total score under the Static 99 was four points, which placed him in the moderate high risk category.

Ellis argues that if he had been charged with one indecent language offense on divers occasions with VC, the number of prior charges against him would have been reduced by three, which would have reduced his score for factor five, resulting in

13

a lower total score and a lower risk category. Because of the methodology of factor five, Ellis argues that since "the principal basis for Dr. Branaman's expert opinion relied so heavily on the mere form and number of charged offenses . . . his testimony did not aid the military judge in determining appellant's rehabilitative potential." As a result, Ellis argues that the probative value of Dr. Branaman's expert testimony based on the appraisal is substantially outweighed by the danger of unfair prejudice, citing M.R.E. 403.

We initially note that the four indecent language specifications involving VC all involved different conduct and occurrences. While Ellis did object at trial as to the reliability of Dr. Branaman's methodology, that objection was limited to the seventy to seventy-five percent accuracy rate of the assessment and the assertion that the addition of dynamic variables could skew the accuracy of the assessment. Ellis did not object to the methodology of factor five, nor did he request a Daubert/Houser inquiry as to the validity of the Static 99 instrument.[8] At oral argument before this court Appellant's counsel clarified that Ellis was not challenging the validity of the Static 99 appraisal. Without such a challenge it is

---

[8] See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); United States v. Houser, 36 M.J. 392 (C.M.A. 1993), cert. denied, 510 U.S. 864 (1993). Although Static 99 is widely used, the issue as to whether it would meet the Daubert standard is the subject of ongoing judicial debate. See Judge Posner's critical discussion in McIlrath, 512 F.3d at 425.

difficult for Ellis to argue that an expert opinion based on the Static 99 appraisal should not have been admitted under M.R.E. 403 because the methodology under factor five may have been flawed.

Once the Static 99 appraisal was accepted by the military judge, the challenges that Ellis had as to methodology went to weight rather than admissibility. In Barefoot, 463 U.S. at 901, the Supreme Court discussed the usefulness of psychiatric predictions of future dangerousness given the number of studies that indicated those predictions were often inaccurate. In allowing the testimony the Court stated that it was unconvinced "that the adversary process cannot be trusted to sort out the reliable from the unreliable evidence, particularly when the convicted felon has the opportunity to present his own side of the case." Id.

Both the defense counsel and the military judge thoroughly questioned Dr. Branaman concerning the methodology of the Static 99 appraisal. Ellis's defense counsel specifically cross-examined Dr. Branaman about the effect of the Government's charging decisions in relation to factor five of the Static 99 appraisal. As a result of this cross-examination, Dr. Branaman acknowledged that had the indecent language charges involving VC been consolidated, Ellis may have been placed in a lower risk category.

United States v. Ellis, No. 09-0382/AF

The military judge was therefore aware of the issue of potential Government influence as a result of their charging decisions on factor five of the Static 99 appraisal, and, as the trier of fact in this case, is presumed to have given it appropriate weight.  United States v. Robbins, 52 M.J. 455, 457 (C.A.A.F. 2000) (A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilty or innocence.).

## DECISION

Under the circumstances of this case, the military judge did not abuse his discretion in allowing Dr. Branaman's expert testimony as to Ellis's risk of recidivism.  The decision of the United States Air Force Court of Criminal Appeals is affirmed.

<u>United States v. Ellis</u>, No. 09-0382/AF

BAKER, Judge (concurring in the result):

I write separately to emphasize that the result in this case is limited to the facts of this case.  Among other things, this was a military judge alone sentencing proceeding and Appellant did not object to the admission of the Static 99 information on <u>Daubert</u>[1] grounds.

The majority opinion identifies these points.  What it does not say is that the Static 99 system has not been fully vetted under <u>Daubert</u> in the context of the military justice system.  In the civilian context, at least one circuit court of appeals has expressed skepticism regarding the system.  In that case, Judge Posner stated:

> [Static 99] may be more accurate than clinical assessments . . . but that may not be saying much. Estimates of recidivism are bound to be too low when one is dealing with underreported crimes such as sex offenses.  Static 99 treats as a recidivist only someone who is <u>convicted</u> of a further sex offense, but the recidivism concern is with someone who commits a further offense, whether or not he is caught -- yet if he is not caught, his subsequent crime does not affect the data on which the Static 99 calibrations are based.

<u>United States v. McIlrath</u>, 512 F.3d 421, 425 (7th Cir. 2008).

My concern is with how the Static 99 system should be used in military sentencing, if at all.

---

[1] <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

Military sentencing is predicated on the individualized consideration of the accused. This is well established in our case law. See United States v. Mamaluy, 10 C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959) ("accused persons are not robots to be sentenced by fixed formulae but rather, they are offenders who should be given individualized consideration on punishment"); see also United States v. Snelling, 14 M.J. 267, 268 (C.M.A. 1982). A formulaic methodology used for sentencing such as the Static 99 used here would seem to convert individualized consideration into a numeric calculation based on static factors, including matters that in the military justice system are inherently discretionary, like whether the prosecutor charges conduct "on divers occasions" or through multiple counts.

Nonetheless, in this case, I am confident Appellant received the individualized sentencing consideration the Uniform Code of Military Justice requires. First, this was a military judge alone trial. A military judge in particular is suited to understand the difference between a statement that thirty-eight percent of persons with the same Static 99 score re-offended and a statement that there was a thirty-eight percent chance that this Appellant would re-offend. Second, Appellant had ample opportunity to cross-examine the expert and place his concerns and doubts before the military judge. Third, the seventeen-page

stipulation of fact put the static factors on which the system

relies into the individualized context of this case.