****CORRECTED COPY – DESTROY ALL OTHERS****

# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

### No. ACM 39259

———————————

### UNITED STATES
*Appellee*

**v.**

### Troy C. HODGE
Senior Airman (E-4) U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 July 2018[1]

———————————

*Military Judge:* Joseph S. Imburgia (arraignment); Andrew Kalavanos.

*Approved sentence:* Dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 10 December 2016 by GCM convened at Shaw Air Force Base, South Carolina.

*For Appellant:* Captain Meghan R. Glines-Barney, USAF (*argued*); Major Patrick A. Clary, USAF.

*For Appellee:* Captain Anne M. Delmare, USAF (*argued*); Major Mary Ellen Payne, USAF (*on brief*); Colonel Julie L. Pitvorec, USAF; Lieutenant Colonel Joseph J. Kubler, USAF.

*Amicus Curiae for Appellant*: Matthew E. Selmasska (*law student, argued*); Michele R. Vollmer, Esquire (*supervising attorney*); Ekakshra Mahajan (*LL.M. student*); James Hutchison (*law student*); Tiffany Kernen (*law student*); Adrian Rodgers (*law student*)—The Pennsylvania State University, Penn State Law - University Park.

———————————

[1] We heard oral argument in this case on 6 April 2018 at The Pennsylvania State University, Penn State Law - University Park as part of this court's Project Outreach.

*Amicus Curiae for Appellee:* Thorsten Swider (*law student, argued*); Leah J. Davis, Esquire (*supervising attorney*); Robert Gross (*law student*); Sean Piè (*law student*)—The Pennsylvania State University, Penn State Law - University Park.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges.*

Judge SPERANZA delivered the opinion of the court, in which Chief Judge MAYBERRY and Senior Judge JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SPERANZA, Judge:

A general court-martial composed of officer and enlisted members convicted Appellant of one charge and three specifications of violating Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012), for abusive sexual contact of Senior Airman (SrA) BS and JB and sexual assault of JB. The court members sentenced Appellant to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the adjudged sentence.

On appeal, Appellant claims (A) he is entitled to a new sentencing hearing or sentence relief because the military judge erred in admitting expert testimony regarding his rehabilitative potential; and (B) he is entitled to relief for post-trial delay. We disagree with Appellant's assertions, find no prejudicial error, and affirm.

## I. BACKGROUND

Appellant committed sexual offenses against two fellow aircraft maintainers. First, Appellant, without JB's consent, touched JB's penis and placed JB's penis in his mouth while JB was asleep on a couch after a party. On a separate occasion, while on temporary duty at Nellis Air Force Base, Nevada, Appellant "pulled" SrA BS's penis without SrA BS's consent and masturbated after SrA BS vomited from drinking too much alcohol and lay on the hotel-room bathroom floor.

SrA BS reported Appellant's crime. During Appellant's interview with investigators, he admitted to touching SrA BS's penis and JB's penis. When describing the incident involving SrA BS, Appellant explained, "I don't know the stuff that was going through my head at the time … it [the situation]

made me feel kinda wrong, like I don't have control over my body." Appellant also acknowledged having an "impulse" and "wish[ing he] had more self-control." Appellant also admitted to struggling with his sexuality. Appellant took responsibility for his actions and apologized to SrA BS. Appellant's interview was recorded and received into evidence during the findings portion of trial.

## II. DISCUSSION

### A. Expert Testimony on Risk of Recidivism

After findings, the Defense moved in limine to preclude the Government's expert in forensic psychology from testifying during sentencing regarding Appellant's risk of recidivism. In pertinent part, the Defense objected to the expert's use of an actuarial tool to evaluate Appellant's risk and challenged such evidence's reliability. The military judge eventually held a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), in order to determine the reliability, relevance, and, ultimately, admissibility of this evidence.

*Daubert* requires the military judge to determine the following: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; (5) the degree of acceptance within the relevant scientific community; and (6) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *United States v. Henning,* 75 M.J. 187, 192 n.15 (C.A.A.F. 2016) (citing *United States v. Griffin,* 50 M.J. 278, 284 (C.A.A.F. 1999)). The focus of the inquiry as to reliability is the principles and methodology employed by the expert, without regard to the conclusions reached thereby. *Daubert*, 509 U.S. at 595.

Dr. MC, the Government's expert who was recognized as an expert in forensic psychology by the military judge during the findings portion of Appellant's court-martial, testified during the presentencing hearing. He recounted his extensive experience in conducting sexual offender risk assessments utilizing actuarial tools and providing his opinions based upon those tools in trials in a variety of jurisdictions. Dr. MC described the scientific literature related to the recidivism risk of sexual offenders and efforts to identify the factors or characteristics common among reoffenders. He explained how research recognized two major variables or factors that related to a sexual offender's risk of reoffending—sexual deviance or deviant sexual interest and anti-social orientation. He further explained how the research was utilized to develop formal assessment tools and instruments to predict recidivism risk.

Dr. MC described how the tools and instruments generate a score for the offender and how the accuracy of the results is improved with increased research and scientific scrutiny. He summarized the overall methodology in determining the reliability or validity of the data, approximated the number of cases addressed in the relevant literature, and described how data was used to verify an instrument's reliability or accuracy. Dr. MC then provided the military judge with an assessment of the applicable risk assessment tools and declared the instruments to be "scientifically reliable."

Dr. MC informed the military judge that he utilized one of these instruments, the Static 2002R Code Test, to evaluate Appellant's risk for recidivism. Dr. MC explained how the Static 2002R is an updated version of the most-used, most-researched actuarial instrument, the Static 1999, and that the Static 2002R is at least, if not more, reliable than the Static 1999. He described the Static 2002R's scoring categories, how scores can range from -2 to 13, with a direct relationship between the score and recidivism risk, and how he scored Appellant in each category. Appellant received an overall score of 4, which, according to Dr. MC, categorized Appellant as a "low to moderate risk." Dr. MC affirmed that the testing theory and methodology has been subjected to peer review, has a known error rate, and can be tested and re-tested easily. He conceded that the test increases an offender's score by 1 point if a victim is male regardless of the offender's sexual orientation. Because the Static 2002R does not differentiate between heterosexual and homosexual offenders, Dr. MC concluded that sexual orientation is not a factor considered by the instrument. Dr. MC also conceded that the studies upon which the Static 2002R are based were not conducted on military populations.

Although the Defense also enjoyed the assistance of a comparable expert in forensic psychology, the Defense expert did not testify during the hearing. The Defense maintained its objections to the reliability of the recidivism-risk evidence presented by Dr. MC and further objected to Dr. MC's use of the Static 2002R to assess Appellant. During argument on the motion and in response to the military judge's question, the Defense denied having "any case law … that basically undercuts the validity or reliability of th[e] test."

The military judge denied the Defense's motion, finding, in relevant part, the following facts:

> Dr. [MC] is a qualified expert in the area of forensic psychology with a specialization in sex offender assessments. The proffered testimony concerning the accused's risk of recidivism is within the limits of Dr. [MC's] expertise. The diagnostic instrument used by Dr. [MC] is the Static 2002R, a more advanced version of the Static 1999.

First factor to look at under *Daubert* is whether the theory of [sic] technique can be and has been tested, and based on Dr. [MC's] testimony, the Static 2002R has been tested. The test for reoffending, as the witness testified to, is a relatively clear concept: one looks at the records and detection is the issue, and it measures something dichotomous; and one can look at records to make that determination.

Whether the theory of [sic] technique has been subjected to peer review and publication is the next factor. The Static 2002R, along with the earlier version, the Static 1999, has been subjected to peer review and publication, and there is substantial academic literature going back many years.

Number three, whether the known or potential rate of error is acceptable. The known or potential rate is acceptable, as Dr. [MC] testified, the D rate is between .65 and .8, which is scientifically reliable. The research has shown to have good validity and reliability at predicting reoffense rates.

Number four, whether the theory or technique enjoys widespread acceptance. The theory or technique at issue does enjoy widespread acceptance among the scientific community.

Dr. [MC's] opinion … will be based on sufficient factual basis to make it relevant. He has reviewed and observed various items, including: reports of investigation; the … interview of the accused, the video; he has spoken with two of the named victims in this case; and he has been present and observed these proceedings.

After noting the Defense's access to its own expert and citing pertinent law, the military judge ruled,

Under [Rule for Courts-Martial] R.C.M. (702), a witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion, or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help a trier of fact understand the evidence, or to determine a fact in this case. And I've made a determination that this evidence will assist the trier of fact to understand the evidence or determine a fact in this case. In this instance, the rehabilitative potential of [Appellant]. Second, the testimony is based on sufficient facts or data. As I stated previously, the witness will have sufficient facts or data to base his expert opinion upon.

Next, the testimony is the product of reliable principles and methods. Again, as discussed, based on Dr. [MC's] education, history, training, as well as the use of the Static 2002R, the testimony will be the product of reliable principles and methods.

And finally, whether the expert has reliably applied the principles and methods to the facts of this case. Again, hearing Dr. [MC's] proposed testimony that I anticipate will be elicited, the expert has reliably applied the principles and methods to the facts of this case.

Military Rules of Evidence [Mil. R. Evid.] 702, 705 and 403 operate to establish a four-part test for admissibility of expert testimony. Is the witness qualified to testify as an expert? Again, I find that he is. Is the testimony within the limits of the expert's expertise? Again, I find that it is. Is the expert's opinion based on sufficient factual basis to make it relevant? Again, I make that finding in the affirmative. The danger of unfair prejudice created by the testimony overweighs probative value. I find that this is very prejudicial evidence, however, the danger of unfair prejudice created by the testimony does not outweigh its probative value.

I find the diagnostic tool, the updated version of the Static [19]99, the 2002R, meets the requirements of *Daubert* and [Mil. R. Evid.] 702 through 705. I find the proffered expert testimony is admissible under R.C.M. 1001(b)(5)[.]

During sentencing, AS testified about the impact Appellant's crime had on her husband, SrA BS. SrA BS provided an unsworn victim impact statement. JB testified about how Appellant's crimes impacted him. As detailed above, Dr. MC testified about Appellant's risk of recidivism, including Appellant's Static 2002R score and categorization as "low to moderate risk." The Defense thoroughly cross-examined Dr. MC, challenging the bases for Dr. MC's opinions and his application of the Static 2002R to Appellant. Appellant provided the members with oral and written unsworn statements.

Appellant now contends "the military judge committed prejudicial error by permitting the testimony of Dr. MC with regard to the Static 2002R recidivism assessment." Appellant reasons that "[t]he Static 2002R, while an actuarial system, does not address a significant factor in Appellant's case, his sexual orientation," and the omission "inherently and unjustifiably increases his recidivism" score. Appellant also concludes that "the use of the words 'deviant' and 'deviance' by Dr. MC had significant connotations to the members,

the impact of which cannot be determined." Appellant accordingly requests he be granted "meaningful sentence relief or have his case remanded for a new sentence hearing."

We review a military judge's decision to admit expert testimony over defense objection for an abuse of discretion. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Billings*, 61 M.J. 163, 166 (C.A.A.F. 2005)). This court reviews de novo whether the analytical framework announced by the Supreme Court in *Daubert* was correctly followed. *United States v. Henning*, 75 M.J. 187, 191 (C.A.A.F. 2016). "As long as the *Daubert* framework is properly followed, this court will not overturn the ruling unless it is manifestly erroneous." *Id.* (internal quotations omitted).

"A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *Ellis*, 68 M.J. at 344 (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "When judicial action is taken in a discretionary matter, such action can not be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *Id.* (quoting *United States v. Sanchez,* 65 M.J. 145, 148 (C.A.A.F. 2007)) (internal quotation marks omitted); *see also United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993).

Recidivism evidence has been deemed admissible in courts-martial. *United States v. Merritt,* No. ACM 38653, 2015 CCA LEXIS 382, at *7 (A.F. Ct. Crim. App. 10 Sep. 2015) (unpub. op.). In *United States v. Frey*, our superior court held that recidivism is a question requiring expert testimony. 73 M.J. 245, 250 (C.A.A.F. 2014); *see also Ellis*, 68 M.J. at 342 (citing *United States v. Stinson*, 34 M.J. 233, 238–39 (C.A.A.F. 1992)) ("In a sentencing hearing, an accused's potential for rehabilitation is a proper subject of testimony by qualified experts.").

R.C.M. 1001(b)(5) allows the Government to present evidence in sentencing of the accused's potential for rehabilitation. R.C.M. 1001(b)(5)(A) states trial counsel may present evidence in the form of opinion testimony regarding the accused's rehabilitative potential. R.C.M. 1001(b)(5)(B) stipulates that an opinion regarding the accused's rehabilitative potential must be based upon relevant information and knowledge possessed by the witness and must relate to the accused's personal circumstances. The discussion to R.C.M. 1001(b)(5) refers to Mil. R. Evid. 703, which discusses the bases for an expert's opinion testimony and allows an expert to base an opinion on facts or data in the case that the expert has been made aware of or personally observed.

Mil. R. Evid. 702 governs the admissibility of expert testimony and provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the fact of the case.

We find that the military judge did not abuse his discretion by allowing Dr. MC's testimony during sentencing. Here, the military judge's findings of fact are supported by the record. Importantly, the military judge properly followed the *Daubert* framework and rendered his ruling accordingly. His ruling was not *manifestly erroneous*. Thus, this court "will not overturn the ruling." *Henning*, 75 M.J. at 191. Moreover, we find that the military judge used the correct legal principles and reasonably applied those principles to the facts of this case to determine Dr. MC's testimony was reliable and relevant.

While we carefully considered and understand the concerns that Appellant, his amici, and other courts have expressed about actuarial instrument scores being used by a court-martial to assess an offender's risk of recidivism, we are confident that the Static 2002R evidence in this case did not convert Appellant's sentencing proceedings into "a numeric calculation based on static factors." *Ellis*, 68 M.J. at 348 (Baker, J., dissenting). Appellant "received the individualized sentencing consideration the UCMJ requires." *Id.*

**B. Post-Trial Delay**

A presumption of facially unreasonable delay occurs "where the action of the convening authority is not taken within 120 days of the completion of trial." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The convening authority took action in Appellant's case 158 days after Appellant's court-martial adjourned. The Government attributed the delay in Appellant's case to the overall length of the record of trial.

Appellant claims that he "suffered prejudice for this unreasonable delay because he has not received due process of law on appeal, and the delay put off timely resolution of the issues raised by Appellant." Therefore, Appellant asks us to provide him day-for-day credit against his sentence for each day of presumptively unreasonable delay—38 days of confinement credit—or "some other form of modest relief [we] deem appropriate."

Because there is a facially unreasonable post-trial delay in this case, we must examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530

(1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Appellant has not shown prejudice from the delay. Merely equating delay with prejudice does not demonstrate any "particularized anxiety or concern" warranting relief. *See Moreno*, 63 M.J. at 140. Even considering all of the *Barker* factors together, we find no violation of Appellant's due process right to timely post-trial processing and appeal. The 38-day delay was not so egregious as to undermine the appearance of fairness in Appellant's case and the integrity of our military justice system.

Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we also considered, as requested by Appellant, whether relief for post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015),[2] *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), and despite the legal offices' presumptively unreasonable delay in post-trial processing, we deem it is not.

---

[2] These factors include: (1) how long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is evidence of harm to the appellant or institutionally caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing; and (6) given the passage of time, whether this court can provide meaningful relief in this particular situation.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court