# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, SALUSSOLIA, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major ANTIWAN HENNING**
**United States Army, Appellant**

ARMY 20160572

Headquarters, US Army Combined Arms Center & Fort Leavenworth
Charles L. Pritchard, Jr., Military Judge
Colonel John S. T. Irgens, Staff Judge Advocate

For Appellant: Zachary Spilman, Esquire (argued); Major Ryan T. Yoder, JA; Zachary Spilman, Esquire (on brief); Captain Cody Cheek, JA; Zachary Spilman, Esquire (on reply brief).

For Appellee: Captain Natanyah Ganz, JA (argued); Lieutenant Colonel Eric K. Stafford, JA; Major Cormac M. Smith, JA; Captain Natanyah Ganz, JA (on brief).

30 April 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge

In this case, we find the military judge's balancing test under Military Rule of Evidence (Mil. R. Evid.) 403 was clearly erroneous and substantially prejudiced appellant.

A military judge, sitting as a general court-martial, convicted appellant, contrary to his pleas, of two specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dismissal from the service and confinement for thirteen years.

We review this case under Article 66, UCMJ.[1]  Appellant raises seven assignments of error; because we find the military judge's admission of government deoxyribonucleic acid (DNA) evidence was prejudicial error, we need not address the remaining assignments of error.

## BACKGROUND

At appellant's court-martial, the government proffered expert testimony and evidence identifying appellant's DNA in an extract from the victim's underwear. The military judge ruled the expert used an unreliable formula to determine appellant's DNA was in the victim's underwear and granted a defense motion to suppress.  The government appealed the ruling pursuant to Article 62, UCMJ, 10 U.S.C. § 862 (2012).  This court reversed the military judge; finding he made several erroneous findings of fact and conclusions of law and abused his discretion. *United States v. Henning*, No. ARMY MISC 20150410, 2015 CCA LEXIS 376, *11-13 (Army. Ct. Crim. App. 3 Sep. 2015) (mem. op.).

The Court of Appeals for the Armed Forces (CAAF) determined the military judge's findings of fact were not clearly erroneous, his conclusions of law were not incorrect, and he properly applied the framework from *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  *United States v. Henning*, 75 M.J. 187 (C.A.A.F. 2016).  Accordingly, the CAAF reversed our decision and affirmed the ruling of the military judge suppressing the evidence.  *Id*. at 192.

Appellant's court-martial then proceeded.  The government requested "a clarification of the court's suppression ruling" moving to admit alternative testimony and evidence from the same DNA expert, who used the unreliable formula regarding appellant, that the other two men present at the scene of the crime were excluded as DNA contributors in the same extract from the victim's underwear. Defense counsel objected, among other grounds, under Mil. R. Evid. 403.  The military judge recognized admitting the DNA evidence excluding the other two men was problematic under Mil. R. Evid. 403 stating:

> [t]he unfair prejudice in this case consists of leaving the
> impression in the factfinder's mind that the accused was
> not excluded, that surely if they collected DNA evidence
> from everybody else, they collected evidence from him.
> Everything was tested, they excluded two other people and
> he was not excluded.  That's what impression they are left

---

[1] On 11 April 2018, this court heard oral argument on two issues:  1) whether the military judge abused his discretion by admitting evidence that two other people were excluded as possible contributors of DNA found in an extract of the victim's underwear; and 2) whether pulling underwear to the side is legally sufficient to constitute a "touching" for the offense of sexual assault by causing bodily harm?

with logically. Then if that's the case, the defense is left with a choice. Either they can say nothing at all and leave that impression in the factfinder's mind or they can . . . introduce all of this scientific evidence that is unreliable . . . , the reason that the lab included [appellant] as a possible contributor, and then attempt to undermine their own evidence, the evidence that they then raise to say that he should have been excluded. That's the only way that they get there. And so they are forced then to either choose silence and this inference that the panel shouldn't be drawing or to introduce all this evidence that was suppressed.

Even though the military judge expressed his concerns regarding unfair prejudice and that the defense was "in a catch 22" position,[2] he ultimately admitted the evidence excluding the other two men as DNA contributors ruling:

[t]he DNA contributor exclusions of two males who were present in the house during the alleged offenses is relevant and highly probative on the issue of identification of the alleged perpetrator. However, the same evidence is *highly prejudicial* because of its tendency to draw the excluded evidence back into the court-martial. The *logical and unspoken conclusion* of the exclusion evidence is that the accused could not be excluded as a contributor to the DNA in the underwear. The defense then has two options: to leave that unspoken conclusion unrebutted by not delving into the [expert's] DNA methodology and analysis or to resurrect that evidence, particularly that the accused's DNA shared [traits with the] . . . DNA found in the underwear and then to debunk it whether through cross-examination of the government's expert or through direct examination of a defense expert. The latter option would offer the factfinder a dichotomy of believing the [expert] employed good science on the one hand and bad science on the other, a confusing proposition on top of the already highly technical subject matter of DNA testing. . . . [T]his court can reduce the prejudice to the accused first by permitting the defense to elicit from any witness with knowledge and relevant expertise that the accused could

---

[2] "Catch 22" is defined as "a problematic situation for which the only solution is denied by a circumstance inherent in the problem or by a rule." *Webster's Collegiate Dictionary* 180 (10th ed. 1999).

have and/or should have been excluded as a possible contributor to the DNA in the underwear; second, by preventing any government witness, including in rebuttal, from stating that the accused is a possible contributor to that DNA; and third, by not considering the fact, if raised, that the accused shared [DNA traits] with the DNA in the underwear as evidence that he was a possible contributor to that DNA. Given those mitigation remedies the danger of unfair prejudice does not substantially outweigh the probative value of the evidence, and with those caveats the evidence is not excluded.

(emphasis added).

## LAW AND ANALYSIS

### *Standard of Review*

We review a military judge's Mil. R. Evid. 403 evidentiary ruling for an abuse of discretion. *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (citing *United States v. Moss*, 63 M.J. 233, 236 (C.A.A.F. 2006)). For a ruling to be an abuse of discretion, it must be "more than a mere difference of opinion;" rather, it must be "'arbitrary, fanciful, clearly unreasonable' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). This court will not reverse a conviction for an error of law unless the error materially prejudiced appellant's substantial rights. Article 59a, UCMJ*; United States v. Powell*, 49 M.J. 460, 465 (C.A.A.F. 1998).

### *Mil. R. Evid. 403 Balancing Test*

Mil. R. Evid. 403 requires a military judge to decide whether the probative value of evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (citing *Del. v. Van Arsdall*, 475 U.S. 673 (1986)). The military judge's ruling focused on the evidence's probative value and the potential for the receipt of less prejudicial evidence to mitigate against the harm of unfair prejudice. *See United States v. Wright*, 53 M.J. 476, 482 (2000) (providing a non-exhaustive list of factors for the military judge to weigh when conducting a Mil. R. Evid. 403 balancing test). The probative weight of evidence cannot be weighed in a vacuum but must be evaluated based on the purpose for which it is offered.

The government's purpose in offering the DNA evidence was to establish the male DNA found in the victim's underwear, which was not from the two other men at the crime scene, corroborated the victim's testimony that she was sexually assaulted by appellant. The inevitable "logical and unspoken conclusion" being if the two other men are excluded and appellant is not excluded–appellant is the perpetrator. The military judge, however, already ruled the government was prohibited from presenting evidence that appellant's DNA was located in the victim's underwear because the expert used an unreliable testing formula.[3] With the government precluded from establishing the inclusion of appellant's DNA, any other type of DNA evidence which created a "logical and unspoken conclusion" that appellant was the perpetrator possessed minimal, if any, probative value. Admitting such evidence would allow an impermissible inference in direct contravention with the military judge's previous ruling. Under this backdrop, the military judge's determination that the evidence of the other two men's exclusion was highly probative is clearly erroneous.

As to the second part of the balancing test, we agree with the military judge that the evidence was highly prejudicial. As stated by defense counsel, allowing the process of elimination to "leave [appellant] as the sole [unexcluded] person . . . [who contributed male DNA to the extract in the victim's underwear was] highly prejudicial to the court's [previous] ruling."

Our concern is the military judge's "mitigation remedies" did not rectify the inherent and highly unfair prejudice of admitting such evidence in direct contravention of the previous ruling excluding appellant. Mil. R. Evid. 403 "addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness." *United States v. Collier*, 67 M.J. 347, 354 (C.A.A.F. 2009). Allowing one ruling to stand, which is in direct opposition to another ruling, impacts the fairness of the trial process.

Further, we pause to question the propriety of crafting a remedy to lower the danger of "highly prejudicial" government evidence by shifting the burden to the defense to present evidence mitigating the prejudice. The first remedy which "permit[s] the defense to elicit from any witness" evidence of appellant's exclusion after the government's evidence was already admitted appears to place a burden on the defense to present evidence. The military judge found the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice because the defense could later present evidence to mitigate the harm. A proper Mil. R. Evid. 403 balancing test would seem to necessitate a review of the probative value of the government's evidence as weighed against the danger of unfair prejudice at

---

[3] A ruling affirmed by CAAF. *See United States v. Henning*, 75 M.J. 187 (C.A.A.F. 2016).

5

the time of the evidence's admittance as opposed to also weighing some future act requiring the defense to raise evidence to negate the unfair prejudice.

Even if the military judge's remedies and balancing test was appropriate, we find the ruling was nevertheless clearly erroneous because the evidence possessed minimal, if any, probative value based on the military judge's previous ruling regarding appellant. The evidence's probative value was substantially outweighed by the danger of unfair prejudice that the "logical and unspoken conclusion" was the male DNA in the victim's underwear was from appellant and he was the perpetrator.

We find appellant's rights were materially prejudiced because the case centered on the believability of the victim and the evidence corroborating her testimony as to the occurrence of the sexual assaults came in the form of the erroneously admitted DNA evidence excluding the two other men at the scene.

## CONCLUSION

The findings of guilty and the sentence are SET ASIDE. A rehearing may be ordered by the same or a different convening authority.

Senior Judge CAMPANELLA and Judge SALUSOLIA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court