# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM S32625 (f rev)

_____

### UNITED STATES
*Appellee*

**v.**

### Tucker L. BINEGAR
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 14 September 2022

_____

*Military Judge:* Matthew D. Talcott; Andrew R. Norton (remand).

*Sentence:* Sentence adjudged on 11 June 2019 by SpCM convened at Tinker Air Force Base, Oklahoma. Sentence entered by military judge on 4 October 2019 and reentered on 29 March 2021: Bad-conduct discharge, confinement for 120 days, reduction to E-1, and a reprimand.

*For Appellant:* Major Ryan S. Crnkovich, USAF; Major Benjamin H. DeYoung, USAF; Major David A. Schiavone, USAF; Mark C. Bruegger, Esquire.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Lieutenant Colonel Dayle P. Percle, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire; Deniz Gunaydin (legal intern).[1]

Before JOHNSON, POSCH, and CADOTTE, *Appellate Military Judges*.

Judge CADOTTE delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge POSCH joined.

_____

---

[1] Mr. Gunaydin was supervised at all times by attorneys admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

CADOTTE, Judge:

A special court-martial composed of a military judge sitting alone found Appellant guilty, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of conspiracy to possess lysergic acid diethylamide (LSD), in violation of Article 81, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 881;[2] and one specification each of wrongful use of cocaine on divers occasions, wrongful use of LSD on divers occasions, and wrongful possession of LSD, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[3] The convening authority initially approved the sentence as adjudged, then issued a second Decision on Action memorandum approving only 120 days of the adjudged five months' confinement in accordance with the PTA.[4] Afterwards, the military judge entered a sentence of a bad-conduct discharge, confinement for 120 days, reduction to the grade of E-1, and a reprimand.

Appellant's case is before this court for the second time. Appellant initially raised one assignment of error: (1) whether Appellant was materially prejudiced by the Government's failure to serve Appellant with a copy of the record of trial. The court raised a second issue: (2) whether the convening authority failed to take action on the entire sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.)). Our court remanded Appellant's case to the Chief Trial Judge, Air Force Trial Judiciary, to resolve the second issue. *United States v. Binegar*, No. ACM S32625,

_____

[2] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant entered a plea of not guilty to a specification of wrongful distribution of LSD in violation of Article 112a, UCMJ, 10 U.S.C. § 912a (2016 *MCM*). The specification was withdrawn and dismissed pursuant to the PTA.

[4] On 13 August 2019, the convening authority signed a Decision on Action memorandum, but failed to reduce Appellant's confinement to 120 days as required by a term of the PTA. On 27 September 2019, before the military judge signed the EoJ, the convening authority signed a second Decision on Action memorandum in which he complied with this term.

2021 CCA LEXIS 107, at *10–11 (A.F. Ct. Crim. App. 10 Mar. 2021) (unpub. op.).[5]

On 24 March 2021, the convening authority signed a third Decision on Action memorandum in which, in addition to the actions included in his previous decision to approve only 120 days of confinement, he approved the remainder of the adjudged sentence of a bad-conduct discharge, reduction to the grade of E-1, and a reprimand. On 29 March 2021, a new entry of judgment (EoJ) was completed. Subsequently, the record of trial was returned to this court.

Once the case returned to this court, Appellant raised four additional assignments of error: (3) whether the military judge abused his discretion in refusing to admit evidence of the confinement conditions Appellant would suffer at a local confinement facility because, in the judge's view, it constituted a "collateral matter" which could not be considered; (4) whether the conditions of Appellant's confinement entitle him to relief on the basis of cruel and unusual punishment in violation of the Eighth Amendment[6] and Article 55, UCMJ, 10 U.S.C. § 855, or, in the alternative, whether Appellant is entitled to relief pursuant to Article 66, UCMJ, 10 U.S.C. § 866, because those conditions rendered his sentence inappropriately severe; (5) whether the convening authority abused his discretion in disapproving Appellant's deferment request without articulating his reasons; and (6) whether the convening authority did not comply with a material term of the PTA by failing to unambiguously dismiss Specification 4 of Charge II with prejudice.

We find the convening authority's latest action and the new EoJ remedy the error identified in our earlier opinion. We also find issue (1) does not warrant further discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We dismiss Specification 4 of Charge II with prejudice in our decree. Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and the sentence.

---

[5] Subsequent to our remand, the United States Court of Appeals for the Armed Forces (CAAF) decided *United States v. Brubaker-Escobar*, 81 M.J. 471 (C.A.A.F. 2021) (per curiam). In *Brubaker-Escobar*, the CAAF held the convening authority committed a procedural error by taking no action on the sentence, when the case involved a conviction for at least one offense committed before 1 January 2019 and referral was after 1 January 2019. *Id.* at 475. The CAAF tested the procedural error for material prejudice. *Id.*; *see also United States v. Aumont*, 82 M.J. 37 (C.A.A.F. 2021) (mem.) (remanding to our court to determine whether the procedural error of taking no action on the sentence materially prejudiced a substantial right of the appellant).

[6] U.S. CONST. amend. VIII.

## I. BACKGROUND

Appellant began using LSD sporadically in December 2016. Then, in the fall of 2018, Appellant began to use LSD more frequently. Appellant and another Airman (his roommate) conspired to obtain LSD from a source they located on the Internet. Appellant and his roommate downloaded an Internet application that allowed them to purchase the drug from a "Dark Web marketplace." They purchased liquid LSD for $400.00 and had it shipped to their home in Moore, Oklahoma. In total, Appellant used LSD between 10 to 20 times. Appellant typically ingested between one to three doses on each occasion and used it with his roommate, other Airmen, and civilians. In addition to using LSD, Appellant also used cocaine by snorting it through a rolled dollar bill on four occasions between 2016 and 2018.

## II. DISCUSSION

### A. Admission of Evidence of Confinement Conditions

Appellant asserts the military judge abused his discretion by refusing to admit evidence of potential adverse confinement conditions at Midwest City Jail because the military judge found those conditions to be a "collateral matter." We are not persuaded that the military judge erred.

#### 1. Additional Background

During Appellant's sentencing case, trial defense counsel offered a two-page exhibit marked as Defense Exhibit E for identification. The exhibit consisted of an email exchange between trial defense counsel and Lieutenant (Lt) JH from Midwest City Jail. The email memorialized a telephone conversation trial defense counsel and Lt JH had that same day. At the time his counsel offered this exhibit, Appellant was not serving confinement nor was he confined before trial. In the email exchange, Lt JH confirmed the following points as relayed by trial defense counsel:

> (1) Since Tinker [Air Force Base (AFB)] does not have a confinement facility, your facility houses all of their pretrial and posttrial confinees for up to six months.

> (2) The confinees from Tinker [AFB] are separated from the general inmate [populace] and do not interact with each other. The Tinker [AFB] confinees remain in their 8x10 cell for the entirety of their stay, except when they have medical appointments, weekly visitation hours if they have visitors, and when showering. For the most part, the Tinker [AFB] confinees are in solitary confinement.

> (3) There is no gym, recreational area, or outdoor area for use.

(4) Confinees can read books but there is not TV or computer access.

(5) [Midwest City Jail] does not have any rehabilitation programs, such as substance abuse treatment or counseling, that [A]irmen are allowed to participate in.

Trial defense counsel argued the exhibit demonstrated his understanding that if confinement were adjudged, then Appellant would be placed into "solitary" confinement at Midwest City Jail and the exhibit is evidence in mitigation. Trial counsel objected to the admission of the exhibit, arguing that the conditions at the jail were a collateral matter. After hearing argument from counsel for both parties, the military judge ruled that the exhibit referenced a collateral matter and sustained the Government's objection. The military judge explained why he did not admit the exhibit:

> Defense Exhibit E for identification will not be admitted nor be considered by this court. I reviewed the document and it's clear to this [c]ourt at least, this is collateral matter and that is describing the staff, circumstances, current procedures of that confinement facility, presumably the Defense thinks the [Appellant] would spend his confinement, or majority of his confinement, or a portion of his confinement at, all that is subject to change. It's just clear to this [c]ourt that this is a collateral matter and not a subject for the [c]ourt should be considering in crafting an appropriate punishment. P[er]haps it would be appropriate materials, or not, for the [c]onvening [a]uthority to consider on clemency requests, and referral requests, I think the [c]onvening [a]uthority has the authority to decide on the confinement facility final location, but this [c]ourt does not because it is a collateral matter.

### 2. Law

We review a military judge's decision to admit or exclude sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). A military judge abuses his discretion when (1) the findings of fact upon which he bases his ruling are not supported by the evidence of record; (2) he uses incorrect legal principles; or (3) his application of the correct legal principles to the facts is clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

"The general rule concerning collateral consequences is that 'courts-martial [are] to concern themselves with the appropriateness of a particular sentence

for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration.'" *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A. 1988) (alteration in original) (citation omitted). "A collateral consequence is '[a] penalty for committing a crime, in addition to the penalties included in the criminal sentence.'" *United States v. Talkington*, 73 M.J. 212, 215 (C.A.A.F. 2014) (alteration in original) (internal quotation marks and citations omitted).

### 3. Analysis

The focus of sentencing proceedings is the character of an appellant and his offenses in order "to prevent 'the waters of the military sentencing process' from being 'muddied' by 'an unending catalogue of administrative information.'" *Talkington*, 73 M.J. at 216 (citations omitted). Defense Exhibit E for identification constitutes a select description of prison conditions that a military confinee might face at Midwest City Jail. As such, it was speculative at sentencing to assume conditions Appellant might be likely to experience.

In *United States v. Cueto*, __ M.J. __, No. 21-0357, 2022 CAAF LEXIS 517, *18 (C.A.A.F. 19 Jul. 2022), the United States Court of Appeals for the Armed Forces (CAAF) examined whether trial defense counsel was ineffective for failing to expressly mention administrative discharge requirements in sentencing argument. In concluding that trial defense counsel's performance was not deficient, the CAAF explained that the military judge could not "determine whether an administrative discharge would occur based on the Air Force Instruction without holding a trial within a trial, and even such a trial within a trial could produce only a speculative result."

Here, we similarly conclude that the military judge did not abuse his discretion by refusing to admit evidence of confinement conditions at Midwest City Jail. Resolving where, and under what conditions, Appellant would be confined would require "a trial within a trial" to achieve a speculative result and detract from the purpose of sentencing proceedings.

## B. Post-Trial Confinement Conditions

Appellant claims that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ, when he was confined at Midwest City Jail. In the alternative, Appellant asks this court to grant relief under its Article 66, UCMJ, authority. We are not persuaded relief is warranted.

### 1. Additional Background

Upon announcement of his sentence on 11 June 2019, Appellant was transferred to Midwest City Jail where he remained until released just over three months later. Appellant alleges he was held in solitary confinement.

On 21 June 2019, Appellant submitted a request for clemency to the convening authority. In the request Appellant stated:

> I am isolated in solitary confinement within a cell that has no windows and just a slot in the door to insert a food tray. The lights are on and they never completely shut off in the evening, instead the lights only slightly dim during sleeping hours. I stay in this cell 24 hours a day, 7 days a week. The only time I am ever able to leave my cell is for any appointments on base, to shower, or if I have any visitors. During my on-base appointments, I am escorted around the base in shackles. I have no access to a gym, recreational room, or outside area at this facility. I do not have access to a TV or a computer. My uniform of the day is the orange jumpsuit worn by other inmates in the facility. Even my meals and books are delivered to me with minimal human contact as they are just slid through the slot in my door.

Appellant further explained that he had made significant progress in the treatment of his depression before his court-martial, but he felt he lost that progress as a result of these conditions. Appellant requested the convening authority reduce his confinement.

On 23 February 2022, we granted Appellant's motion to attach documents,[7] which included a declaration from Appellant stating:

> I served my entire sentence to confinement at Midwest City [J]ail. Throughout the duration of my confinement at Midwest City [J]ail, I was in solitary confinement. I was not placed in solitary confinement for any disciplinary reason. It was just where the facility decided to house me. My cell had no windows. The only opening was a slot in the door to insert a food tray. The lights were always on and never completely turned off. I was restricted to my cell for 24 hours a day, seven days a week. The only time I was permitted to leave my cell was when I had an appointment on base, to shower, or if I had a visitor. There was no gym or recreation room that I was permitted to use, either indoors or outdoors. My meals were delivered to me through the slot in my cell door.

---

[7] We consider the declaration, to include the attachments, necessary to resolve an issue "raised by the record but [ ] not fully resolvable by the materials in the record," and to determine whether Appellant's Eighth Amendment and Article 55, UCMJ, 10 U.S.C. § 855, rights were violated. *United States v. Jessie*, 79 M.J. 437, 442–44 (C.A.A.F. 2020).

[ ] These conditions took a significant toll on my mental health and wellbeing, especially since I already suffered from depression at the time I was sentenced to confinement. Being placed in isolation, especially for someone with a preexisting mental health condition like myself, is a cruel fate. My time in solitary confinement caused me significant anxiety and worsened my depression. I still continue to experience panic attacks when I think about it, and there are times I cannot sleep at night when I think about it.

On 24 March 2022, we granted the Government's motion to attach documents which included a 23 February 2022 declaration of Lt FV from the Midwest City Police Department.[8] Lt FV was assigned as the Administrative Assistant over Midwest City Jail. He stated in the declaration:

The Midwest City Jail is a small facility housing a maximum of seventy (70) inmates but due to recent changes in local laws the jail averages approx[imately] 12 inmates on a daily basis. This includes civilian and military inmates. The civilian inmates are separated by gender, with the male inmates being housed in one area and the female inmates being held in another. Military inmates are separated from other civilian inmates as well as by both gender and status (i.e. pre or post-trial). It is not unusual for our facility to house multiple military inmates. When that happens – provided they are in the same status – they are housed in the same cell. But if there are no other military inmates, that individual will not have any cellmates. [Appellant] was housed in B1, B2, and C2 during his stay at the Midwest City Jail. Inmates are moved to different areas for different reasons to include discipline, medical reasons, as well as issues with facility maintenance (i.e. electrical repairs, plumbing repairs, etc.). I do not know why [Appellant] was moved but have no records of any disciplinary actions during his stay.

Our records indicate that [Appellant] was held at our facility for a little more than three months – 11 June 2019 at 1900 hours through 20 September 2019 at 0838 hours. There was not another post-trial military inmate in the facility at that time to be housed with him. [Appellant] was held in B dorm as well as C

---

[8] We consider the declaration necessary to resolve an issue "raised by the record but [ ] not fully resolvable by the materials in the record," and to determine whether Appellant's Eighth Amendment and Article 55, UCMJ, 10 U.S.C. § 855, rights were violated. *Jessie*, 79 M.J. at 442–44.

dorm, B1 and B2 are single cells and C2 . . . can hold four (4) inmates. The Midwest City Jail attempts to house inmates in the larger cells when available but this is not always possible when there is only one pre-trial/post-trial inmate at our facility since we also have special confinement needs for other inmates as well.

Lt FV explained that the "Midwest City Jail does not have a recreation yard or exercise facility for any of [the] inmates, however the cells are large enough for the inmates to do body weight exercises (e.g., pushups, sit-ups, jumping jacks) and inmates have access to our library to read books." Inmates are also permitted to shower whenever they wish, and to leave the cell for on-base appointments, visitors, and church service held at the jail twice a week. Appellant had 18 visits according to records that did not track additional visits by command staff. According to Lt FV, lights in the jail are only dimmed during sleeping hours to allow for "proper functioning of the security cameras" monitoring the cells.

Lt FV stated that Midwest City Jail has a grievance system which is briefed to the inmates, however he was unable to find any complaints from Appellant in that system. Attached to Lt FV's declaration was a copy of Appellant's medication log, visitation log, confinement order, a statement of confinement agreement, and booking sheet.

The Government's motion to attach included a declaration of one of Appellant's two first sergeants during the time he was confined. The first sergeant recalled visiting Appellant on at least three occasions, either by herself or sometimes with the other first sergeant. Although she was unsure whether the commander accompanied her during one of those visits, she believed the other first sergeant conducted at least one visit with Appellant on her own. The first sergeant recalled meeting with Appellant at different locations in the jail. Each time, they were together in the same room and never separated by glass. During those visits, Appellant did not complain about the conditions of confinement or ask for command intervention on any issue.

The Government's motion to attach also included a declaration of the non-commissioned officer in charge (NCOIC) of the confinement section at Tinker AFB. The NCOIC explained that Appellant received 20 days credit against his 120-day sentence to confinement for good time. During the period that Appellant was confined, Appellant was escorted to 12 appointments on base. The appointments included five trips for mental health treatment, four trips for medical appointments, two trips to participate in an alcohol and drug abuse prevention and treatment program, and one trip to the area defense counsel.

**2. Law**

Claims that the Government violated Article 55, UCMJ, and the Eighth Amendment are reviewed de novo. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)). Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, when a claim is raised pursuant to Article 55, UCMJ, we apply the United States Supreme Court's interpretation of the Eighth Amendment except where it is apparent that legislative intent provides greater protections under Article 55. *See United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000).

"[T]he Eighth Amendment prohibits two types of punishments: (1) those incompatible with the evolving standards of decency that mark the progress of a maturing society or (2) those which involve the unnecessary and wanton infliction of pain." *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (internal quotation marks and citations omitted). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"A violation of the Eighth Amendment is shown by demonstrating: (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [an appellant]'s health and safety; and (3) that [an appellant] has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938 [2000]." *Lovett*, 63 M.J. at 215 (omission in original) (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). Under a deliberate indifference standard, "prison guards and officials must be consciously aware of the risk or danger to the inmate and choose to ignore it; they must have been aware of the harm or risk of harm caused appellant, and continued anyway." *United States v. Sanchez*, 53 M.J. 393, 396 (C.A.A.F. 2000).

Solitary confinement is not a *per se* Eighth Amendment violation. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citing *Sostre v. McGinnis*, 442 F.2d 178, 192 (2d Cir. 1971)). Rather, the totality of the circumstances of the confinement conditions are considered in determining whether a sufficiently serious deprivation under the Eighth Amendment has been shown. *Id.* at 102. The length of a period of segregation "does not, by itself, constitute cruel and unusual punishment, but is simply a factor to be considered along with the other aspects of confinement." *Id.* (observing "courts have also rejected the contention that deprivation of human contact, including the harmful effect it may potentially have on a prisoner's mental health, violates the Eighth Amendment").

10

Courts of Criminal Appeals have the authority under Article 66, UCMJ, to grant sentence appropriateness relief for post-trial confinement conditions even when they do not amount to cruel and unusual punishment, but where there is nonetheless a legal deficiency in the post-trial confinement conditions. *United States v. Gay*, 74 M.J. 736 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002) (affirming a broad authority of Courts of Criminal Appeals to review and modify sentences pursuant to Article 66, UCMJ).

### 3. Analysis

Appellant in his clemency submission, brief, and declaration describes his circumstances at Midwest City Jail as solitary confinement. Some aspects of that description are fittingly analogous to a secluded setting as this phrase might suggest; however, the declarations as a whole demonstrate that many are not. We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's declarations and those provided by the Government. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 147, 413 (C.M.A. 1967) (per curiam). In this case we find a hearing unnecessary. To the extent the documents may be inconsistent, resolving any factual disputes in Appellant's favor would not result in relief. *See Ginn*, 47 M.J. at 248.

In order to secure relief for cruel or unusual confinement conditions, Appellant bears the burden to demonstrate all three prongs of the test articulated in *Lovett* are met. 63 M.J. at 215. Appellant has failed to do so. Prison records show Appellant was permitted numerous visits while confined at Midwest City Jail when it was sparsely populated with inmates. During several welfare checks from his command's first sergeants, Appellant did not complain about isolation or ask his chain of command to intervene to correct this or other conditions he now claims were injurious to his health and welfare. Significant too, Appellant was routinely taken from his confinement to on-base appointments. Considering all the declarations before this court, Appellant's case does not involve conditions of complete and protracted isolation from human contact, much less for a disciplinary or punitive reason.[9]

Appellant concedes he did not attempt to file an Article 138, UCMJ, complaint seeking administrative relief regarding confinement conditions. Further, Appellant has failed to demonstrate he has exhausted the prisoner grievance system at Midwest City Jail. Despite these deficiencies, Appellant argues his clemency submission satisfies the last prong of the *Lovett* test. We disagree

---

[9] In addition to contact with visitors, command staff, and with personnel during on-base visits, records show daily interaction with guards who gave Appellant his medicine.

because "[e]xhaustion requires Appellant to demonstrate that two paths of redress have been attempted, each without satisfactory result. Appellant must show that 'absent some unusual or egregious circumstance . . . he has exhausted the prisoner-grievance system [in his detention facility] and that he has petitioned for relief under Article 138.'" *Wise*, 64 M.J. at 471 (omission and alteration in original). Appellant has not done so. Even if Appellant's clemency submission might satisfy the requirement to file an Article 138 complaint, Appellant still failed to exhaust his administrative remedies by not availing himself of a prison grievance system.

Appellant's failure to pursue administrative remedies undermines his claim in another respect. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In that regard, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Appellant argues the conditions alone establish a necessary culpable state of mind because "prison officials and the United States Air Force" are "continuing to contract with the Midwest City [J]ail." However, Appellant's failure to exhaust the prisoner grievance system failed to put prison officials on notice as required under a deliberate indifference standard. Moreover, Appellant has not demonstrated such officials were otherwise on notice of Appellant's assertedly harmful situation. Accordingly, Appellant has failed to demonstrate officials were consciously aware of a risk or danger and chose to ignore it. Appellant's argument falls far short of demonstrating a culpable state of mind of an identifiable official amounting to deliberate indifference to Appellant's health and safety that resulted in denial of necessities. *See Lovett*, 63 M.J. at 215.

Appellant asserts, in the alternative, that confinement conditions and post-confinement treatment warrant relief pursuant to Article 66(d), UCMJ, and *Gay*. When considering Article 66-based claims, we have declined to require that appellants demonstrate that they have previously exhausted administrative remedies prior to seeking judicial relief. *See United States v. Henry*, 76 M.J. 595, 610 (A.F. Ct. Crim. App. 2017). We instead consider the entire record and typically give "significant weight" to an appellant's failure to exhaust those remedies before requesting judicial intervention. *Id.* This court has considered the non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief. *See Gay*, 74 M.J. at 744. On the whole, we find that Appellant's claims do not merit sentencing relief.

## C. Denial of Deferment Request

Appellant argues the convening authority's failure to articulate his reasons for denying Appellant's deferment request amounted to an abuse of discretion.

We agree the convening authority erred by failing to include a reason for denying Appellant's request to defer his reduction in grade. However, we find no relief is warranted.

### 1. Additional Background

On 21 June 2019, Appellant submitted a request for deferment of reduction in grade and waiver of automatic forfeitures. Appellant requested the deferment and waiver in order to provide financial support to his dependent daughter. On 1 August 2019, the convening authority denied the deferment request, but granted the waiver request in part by authorizing $300.00 to be paid for the benefit of Appellant's daughter. We noted in our previous opinion the original EoJ erroneously stated "[n]o action was taken on this request" and the convening authority did not provide reasons for his denial of the deferment request. *Binegar*, unpub. op. at *4. We deferred further consideration of this issue until Appellant's record was returned to this court. *Id.*

After our remand, on 24 March 2021, the convening authority signed a third Decision on Action memorandum which states: "On 21 June 2019, the [Appellant] requested deferment of the reduction in grade. On 1 August 2019, deferment was denied." The convening authority did not give a reason for the denial.

Following Appellant's submission of assignments of error, we granted the Government's motion to attach four documents, one of which was a declaration from the convening authority, dated 10 March 2022.[10] In that declaration, the convening authority explained his reasons for denying Appellant's request to defer reduction in grade:

> I denied the deferment request due to the nature of the offenses for which he was convicted, the sentence adjudged, and [Appellant's] character, family situation, and service record. The limited purpose for which [Appellant] requested deferment of his reduction in grade did not outweigh our community's interest in the imposition of his punishment on its effective date. Moreover, the partial waiver of forfeitures was sufficient to meet [Appellant's] stated need. In my judgment, denying the deferment request, while also partially approving the waiver request, balanced [Appellant's] need to provide financial support for his daughter with the need for good order and discipline in my command. Therefore, I directed that $300[.00] pay per month for a

---

[10] We consider the declaration necessary to resolve an issue "raised by the record but [ ] not fully resolvable by the materials in the record," *Jessie*, 79 M.J. at 442, namely, the convening authority's decisions with respect to deferral and action on the sentence.

period of six months, or release from confinement, or expiration of his term of service, whichever was sooner, was to be placed into a bank account for the benefit of his daughter.

**2. Law**

The CAAF has stated that the convening authority's decision on a deferral request "must include the reasons upon which the action is based" in order to facilitate judicial review. *United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018) (footnote omitted).

We review a convening authority's denial of a deferment request for an abuse of discretion. *Sloan*, 35 M.J. at 6; Rule for Courts-Martial (R.C.M.) 1103(d)(2). In order for appellate courts to determine whether the convening authority's denial was an abuse of discretion, the convening authority's action "must include the reasons upon which the action is based." *Sloan*, 35 M.J. at 7 (footnote omitted). When a convening authority fails to set out reasons for denying a deferment request, we look for indications the convening authority considered relevant factors such as those in R.C.M. 1103(d)(2) or considered advice presented by the staff judge advocate or the special court-martial convening authority. *See United States v. Frantz*, No. ACM 39657, 2020 CCA LEXIS 404, at *57 (A.F. Ct. Crim. App. 10 Nov. 2020) (unpub. op.). Additionally, relief is warranted upon "credible evidence that a convening authority denied a request to defer punishment for an unlawful or improper reason . . . ." *United States v. Eppes*, No. ACM 38881, 2017 CCA LEXIS 152, at *43 (A.F. Ct. Crim. App. 21 Feb. 2017) (unpub. op.) (citing *United States v. Zimmer*, 56 M.J. 869, 874 (A. Ct. Crim. App. 2002)), *aff'd*, 77 M.J. 339 (C.A.A.F. 2018).

To correct an "error in the action of the convening authority," a party may file a post-trial motion within five days of receiving the convening authority's action. R.C.M. 1104(b)(1)(F), (b)(2)(B). If the military judge finds "any post-trial action by the convening authority is incomplete, irregular, or contains error," the military judge may return the action to the convening authority for correction. R.C.M. 1104(b)(2)(B)(i). A party may also file a post-trial motion to address "[a]n allegation of error in the post-trial processing of the court-martial." R.C.M. 1104(b)(1)(E).

"[F]orfeiture is the failure to make the timely assertion of a right." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). We review forfeited issues for plain error. *Id.* (citing *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008)). In analyzing for plain error, we assess whether (1) there was error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant. *See United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (citation omitted).

### 3. Analysis

The convening authority was required to provide the reason he denied Appellant's deferment request. The Government concedes the convening authority "should have expressly stated his reasons for denying the deferment request." The Government does not argue the requirement articulated by the CAAF in *Sloan* is inapplicable to cases referred after 1 January 2019. We find that requirement continues to apply to cases, like Appellant's, referred after 1 January 2019. *See* Article 57(b), UCMJ, 10 U.S.C. § 857(b); R.C.M. 1103.

The convening authority erred by failing to include a reason for denying Appellant's request to defer his reduction in grade in his decision memorandum. However we do not find prejudice as Appellant has not shown how that failure potentially affected Appellant's opportunity for a more favorable clemency decision or relief from this court. Having considered the totality of the record, we conclude Appellant has failed to demonstrate prejudice arising from the convening authority's failure to state his reasons when he denied the requested deferment.

### D. Dismissal of Specification 4 of Charge II with Prejudice

Appellant argues the convening authority did not comply with a material term of the PTA by failing to unambiguously dismiss Specification 4 of Charge II with prejudice. We agree and dismiss the specification with prejudice in our decree.

### 1. Additional Background

Appellant submitted a PTA offer to the convening authority, which was approved and accepted on 6 June 2019. The PTA required the convening authority, *inter alia*, to: "[w]ithdraw Specification 4 of Charge II upon acceptance of [Appellant's] guilty plea and dismiss Specification 4 of Charge II with prejudice upon announcement of sentence." At trial, the military judge reviewed this term with Appellant and explained, "Because [dismissal of Specification 4 of Charge II] is with prejudice, you cannot be tried for it at a later point." After accepting Appellant's guilty plea, the military judge engaged in the following exchange with trial counsel:

> [Military Judge (MJ)]: All right, Trial Counsel, I have accepted the guilty plea. Do you wish now to, on behalf of the Convening Authority, to withdraw Specification Four of Charge Two?

> [Trial Counsel (TC)]: Your Honor, the Government would prefer to do that after the announcement of sentence, in accordance with the PTA, just to keep aligned with the language at issue.

> MJ: Trial Counsel, I think what the PTA says, after I accept the guilty plea, the Convening Authority withdraws, and after I announce the sentence, he dismisses.
>
> TC: Understood Your Honor, and certainly (INAUDIBLE).
>
> MJ: So Trial Counsel, I don't think I need you to markup the form or charge sheet, at this time. You tell me the Convening Authority is withdrawing Charge Four, Specification Two [sic], it's done.
>
> TC: Yes, Your Honor.
>
> MJ: Then I'll announce the findings of the Court that will be on the Charges and Specifications before me, if that makes sense.
>
> TC: Yes, Your Honor.
>
> MJ: Okay.
>
> TC: Your Honor, at the direction of the Convening Authority, the Government is withdrawing Specification Four of Charge Two.

After this exchange, the military judge found Appellant guilty of the remaining charges and specifications in accordance with his pleas. The military judge then explained, "So to be sure that there is no confusion, Specification Four of Charge Two had been withdrawn, so that was not included in my announcement. It was not even addressed."

At some point, the assistant trial counsel lined through Specification 4 of Charge II and wrote that it was dismissed on 11 June 2019. The Statement of Trial Results (STR), completed the same day, states Specification 4 of Charge II, was "Withdrawn and dismissed per [the pretrial agreement], dated 3 June 2019." The convening authority did not reference dismissal of the specification in any of the Decision on Action memoranda completed for Appellant's case. Likewise, the original, and corrected copies, of the EoJ state the specification was withdrawn and dismissed, but fail to state that dismissal was with prejudice.

### 2. Law

"A pretrial agreement in the military justice system establishes a constitutional contract between the accused and the convening authority." *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009) (citing *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006)). "In a criminal context, the [G]overnment is bound to keep its constitutional promises." *Lundy*, 63 M.J. at 301. "When an appellant contends that the [G]overnment has not complied with a term of the agreement, the issue of noncompliance is a mixed question of fact and law."

*Smead*, 68 M.J. at 59 (citing *Lundy*, 63 M.J. at 301). An appellant has the burden to establish both materiality and noncompliance. *Lundy*, 63 M.J. at 302. "In the event of noncompliance with a material term, we consider whether the error is susceptible to remedy in the form of specific performance or in the form of alternative relief agreeable to the appellant." *Smead*, 68 M.J. at 59 (citation omitted).

Our superior court and this court have previously found a convening authority's failure to dismiss charges and specifications with prejudice when required by the terms of a PTA to be a material violation that warrants corrective action. *See, e.g.*, *United States v. Malacara*, 71 M.J. 380 (C.A.A.F. 2012) (mem.); *United States v. Marable*, No. ACM 39954, 2021 CCA LEXIS 662 (A.F. Ct. Crim. App. 10 Dec. 2021) (unpub. op.); *United States v. Pullings*, No. ACM 39948, 2021 CCA LEXIS 648 (A.F. Ct. Crim. App. 30 Nov. 2021) (unpub. op.).

**3. Analysis**

The military judge's colloquy with Appellant informed the Appellant that Specification 4 of Charge II was to be dismissed with prejudice in accordance with the PTA. However, the record does not support that the convening authority actually followed through and dismissed that specification with prejudice. At no point does the trial counsel announce that specification was dismissed with prejudice. Also, the charge sheet, the STR, and the EoJ do not reflect that specification was dismissed with prejudice. After considering the entire record, we find the convening authority has failed to comply with the material term of the pretrial agreement. *See Malacara*, 71 M.J. at 380.

We now turn to the appropriate remedy. Appellant requests this court "dismiss Specification 4 of Charge II with prejudice." The Government requests we modify the EoJ "to ensure the post-trial paperwork reflects the benefit of Appellant's bargain," or, in the alternative, that we "dismiss the affected specification with prejudice." After consideration of the proposed remedies, we do not find modification of the EoJ appropriate. Even if, as a general matter, we were to modify the EoJ, the record does not support that the convening authority actually dismissed this specification with prejudice. Consequently, modification of the EoJ is not available to effectuate an action which the convening authority failed to take. Accordingly, we grant Appellant's requested remedy and the alternative remedy purposed by the Government in our decree.

## III. CONCLUSION

Specification 4 of Charge II is **DISMISSED WITH PREJUDICE**. The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court