# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM S32577**

_____

**UNITED STATES**
*Appellee*

**v.**

**Joshua SHEARS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 3 September 2020

_____

*Military Judge:* Joseph S. Imburgia.

*Approved sentence:* Bad-conduct discharge, confinement for 45 days, reduction to E-1, and a reprimand. Sentence adjudged 28 January 2019 by SpCM convened at Kadena Air Base, Japan.

*For Appellant:* Major Yolanda D. Miller, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

MEGINLEY, Judge:

A special court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of one specification of wrongfully endeavoring to interfere with one or more special

agents of the Naval Criminal Investigative Service (NCIS) in the performance of their official duties, and two specifications of communicating indecent language, both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 45 days, reduction to the grade of E-1, and a reprimand. The convening authority deferred the reduction in grade from 11 February 2019 until action and deferred the mandatory forfeitures from 11 February 2019 until Appellant's release from confinement. Otherwise, the convening authority approved the sentence as adjudged. The PTA limited confinement to two months and had no impact on the sentence that the convening authority could approve.

On appeal, Appellant personally raises two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (1) whether the military judge abused his discretion in admitting certain personnel records during presentencing; and (2) whether his sentence is inappropriately severe. We find no error that materially prejudiced Appellant's substantial rights and affirm.

## I. BACKGROUND

Appellant entered active duty in July 2010. At the time of the offenses alleged in the Charge and its specifications, he was stationed at Kadena Air Base (AB), Okinawa, Japan. Between 10 March 2017 and 4 January 2018, special agents of the NCIS sought to identify and apprehend military members attempting to commit sexual offenses against children on the Internet. Those agents posted ads on Craigslist, an advertising website, where the agents posed as minors, or as adults facilitating sexual activity with children of military personnel assigned to installations in Japan. These operations were recognized by Appellant as similar to the "To Catch a Predator" (TCAP) television series.

At trial, Appellant stipulated with the Government that before engaging in the charged conduct, he was aware of TCAP investigations, having seen videos on a website maintained by a civilian defense attorney who represented servicemembers accused of soliciting minors at Kadena AB. In March 2017, Appellant took an interest in one of the TCAP Craigslist advertisements. Appellant stipulated that he believed the ads were posted by military law enforce-

---

[1] All references in this opinion to the Uniform Code of Military Justice, the Rules for Courts-Martial, and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

ment personnel engaging in undercover sting operations, stating to law enforcement after he was apprehended, "it was super obvious . . . like shooting fish in a barrel, no ifs, ands, or buts, these are cops."

Appellant responded to an advertisement via the "Kik" messenger application. Using the username "El_Don23," Appellant requested the poster's Kik user identification via email. On 9 March 2017, an undercover NCIS agent posing as a minor named "Alexandria Tate" responded to Appellant via email, telling him she was 14 years old. Over the next four months, Appellant communicated sexually explicit language to "Alexandria," requested she send him nude photos, and Appellant made graphic sexual overtures. Appellant admitted in his guilty plea inquiry that his communications with "Alexandria" were indecent. Appellant stipulated he believed that "Alexandria" was an undercover agent, and explained his communications with "Alexandria" were with the intent to "mess with" law enforcement. At trial, Appellant further explained his intent was to "[p]retty much interfere with their job, [and] waste their time."

On 27 December 2017, Appellant responded to another Craigslist ad posted by NCIS agents. This ad identified the poster as a "poor teen in need of money." Again, Appellant engaged in conversations with an NCIS agent. The NCIS agent told Appellant she was trying to raise money to buy a phone and identified herself as a 14-year-old girl. Appellant discussed the services she could perform, and agreed that she could wash Appellant's car. Appellant offered to pay her $200.00 if she would wash and wax his car while wearing a bikini. Thereafter, the conversations progressed to sexually explicit statements from Appellant, including indecent propositions to engage in sexual conduct. Like his earlier conversations with "Alexandria," Appellant stipulated that he believed he was communicating with an undercover agent and during his guilty plea inquiry admitted the language he used was indecent.

Two days later, on 29 December 2017, Appellant again initiated a conversation with an NCIS agent's persona. This time, the NCIS agent posed as a 32-year-old military spouse seeking men wanting to have sexual encounters with her and her 13-year-old daughter. Appellant exchanged messages with the agent and agreed to meet over coffee before planning future encounters for sex. On 4 January 2018, Appellant agreed to meet at the Shoppette on Kadena AB. NCIS agents identified and observed Appellant enter and then depart the area. When Appellant left the Shoppette, NCIS agents followed him to a Child Development Center, where he was apprehended. After identifying himself as an Airman, NCIS brought Appellant to the Air Force Office of Special Investigations (AFOSI) for questioning.

During questioning, Appellant told the AFOSI agents he knew all along that the individuals with whom he had been communicating were undercover agents. He claimed that even after the agents identified themselves as 14-year-

old children, he continued the conversations because he wanted to "f**k with [them]." In a second interview, Appellant stated he thought it was obvious the individuals behind the ads were law enforcement and he knew he was interfering with undercover agents working in their official duties. Appellant stipulated that the NCIS agents spent approximately 120 hours working on Appellant's case.

## II. DISCUSSION

### A. Admission of Certain Personnel Records during Sentencing

#### 1. Additional Background

During the sentencing hearing, trial counsel introduced evidence of Appellant's "rehabilitative potential" related to Appellant's numerous physical fitness assessment failures.[2] Trial counsel introduced four letters of reprimand (LORs) (with allied documents including Unfavorable Information File actions), and one letter of counseling (LOC). Trial defense counsel objected to these documents "on the basis of relevance to [the] proceeding." Trial counsel argued the documents were relevant "to his personal data and character of his service" and because Appellant had been repeatedly counseled and had not shown improvement.

Following a discussion on the record about the admissibility of the records under Rule for Courts-Martial (R.C.M.) 1001(b)(2), the military judge asked trial defense counsel if he "would agree that's relevant under the rule?" Trial defense counsel replied, "Yes, sir. We feel that the rule is broad enough that a good faith argument could be made that it is relevant." After conducting a balancing test under Mil. R. Evid. 403, the military judge admitted the LORs and LOC.

#### 2. Law

We review a military judge's admission or exclusion of evidence, including sentencing evidence, for an abuse of discretion. *United States v. Hyppolite*, 79 M.J. 161, 166 (C.A.A.F. 2019). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (citing *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). "A military judge abuses his discretion when: (1) the findings

---

[2] The physical fitness assessment failures were marked as Prosecution Exhibits 5–10 for identification. The military judge found Prosecution Exhibits 5–-9 relevant, but sustained an objection with respect to Prosecution Exhibit 10 for identification, finding the exhibit was cumulative with the other exhibits.

of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Rule for Courts-Martial 1001(b)(2) permits trial counsel to introduce an accused's personnel record as evidence of the prior service of the accused. These personnel records include "any records made or maintained in accordance with departmental regulations that reflect the past military efficiency, conduct, performance, and history of the accused." *Id.* Finally, Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 12.26.1 (18 Jan. 2019), states relevant material contained in an accused's unit personnel information file may be admitted during the sentencing hearing pursuant to R.C.M. 1001(b) if

> [c]ounsel provided a copy of the document or made the document available to opposing counsel prior to trial; and
>
> . . . there is some evidence that:
>
> [(1)] the accused received a copy of the correspondence (a document bearing the signature of the accused, or a witnessed statement regarding the accused's refusal to sign) and had the opportunity to respond to the allegation; and,
>
> [(2)] the document is not over five years old on the date the charges were referred to trial.

*See also United States v. Decker*, No. ACM S32173, 2014 CCA LEXIS 774, *4–5 (A.F. Ct. Crim. App. 15 Oct. 2014) (per curiam) (unpub. op.) (citing *United States v. Sheridan*, 43 M.J. 682, 685 (A.F. Ct. Crim. App 1995), for the proposition that "to be admissible under R.C.M. 1001(b)(2), reprimand need not comply with regulation governing unfavorable information files, but must meet requirements of military justice regulation governing presentencing matters").

### 3. Analysis

We conclude that even if Appellant did not waive appellate review of this issue, the military judge did not abuse his discretion in admitting these records. The military judge's ruling was supported by the record, correct legal principles were used, and the application of those legal principles to the facts presented was reasonable. Furthermore, the relevance and probative value of this evidence with respect to Appellant's past military efficiency, conduct, performance, and history meet the standards set forth in R.C.M. 1001(b)(2) and was not outweighed by the danger of unfair prejudice under Mil. R. Evid. 401 and 403. Finally, the records were made and maintained in accordance with

Air Force regulations, there was evidence Appellant had an opportunity to respond, and none of the documents were more than five years old.

## B. Sentence Appropriateness

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

### 2. Analysis

Appellant asks this court to set aside his bad-conduct discharge because it is inappropriately severe. Appellant argues he "did not commit lewd acts with a minor (or someone he thought was a minor)," that, "[h]e also did not intentionally obstruct justice," and finally, "[h]e is guilty of one general disorder offense that is not enumerated and is not sexual in nature and two enumerated offenses of communicating indecent language." In addition to the nature of these acts being unworthy of a bad-conduct discharge, Appellant notes he had only two months left before his only enlistment expired.

We are not persuaded that the facts of Appellant's case do not justify a bad-conduct discharge. Appellant knew about the nature of TCAP cases. Appellant pretended to be a child predator interested in engaging in the sexual abuse of not one, but two 14-year-old children over the course of 10 months, and went so far as to show up at a military facility, where he pretended to express interest in having sex with a military spouse and her 13-year-old daughter. During the course of his conversations with NCIS, the record shows Appellant never revealed that he believed his indecent communications were with law enforcement agents.

Appellant stipulated that his conduct wrongfully interfered with NCIS agents in the performance of their official duties and that his behavior was service discrediting. The record shows NCIS agents spent an estimated 120 hours investigating and planning a case that appeared to involve an Airman who genuinely desired to sexually abuse a child. This further included having

a NCIS polygraph examiner and a NCIS investigative cyber specialist available in the event an apprehension was made. Appellant acknowledged in his unsworn statement he was "ashamed when [he] was interviewed by AFOSI and was confronted with the amount of work they put in to all investigations, work that they could have been putting in to find actual individuals who victimize children."

Further, the language Appellant communicated to the NCIS agents' 14-year-old persona, as part of his "entertaining prank," was planned or intended to be grossly offensive to the community sense of modesty, decency, or propriety. As trial counsel noted, the texts contain "numerous references to masturbation, vulgar language about and description of hypothetical 14-year-old girls' bodies, and more than 20 descriptions of and invitations to engage in penetrative sexual acts."

The maximum sentence included confinement for 12 months, a bad-conduct discharge, reduction to the grade of E-1, and forfeiture of two-thirds pay per month for 12 months. The military judge determined a 45-day term of confinement was appropriate, which was below the cap Appellant had agreed to in his PTA. However, a bad-conduct discharge is "qualitatively different" than confinement. *United States v. Josey*, 58 M.J. 105, 108 (C.A.A.F. 2003). "The issue of whether a member of the armed forces should or should not receive a punitive discharge reflects a highly individualized judgment as to the nature of the offense as well as the person's past record and future potential . . . ." *Id.* Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we find a punitive termination of Appellant's military status is not inappropriately severe.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court