*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HARRELL, GANNON and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Marrio M. SALMON**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202400073**

_____

Decided: 9 September 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Matthew M. Harris (arraignment)
Aran T. Walsh (motions and trial)

Sentence adjudged 15 November 2023 by a general court-martial tried at Camp Pendleton, California, consisting of members with enlisted representation. Sentence in the Entry of Judgment: dishonorable discharge, confinement for 3 years, a reprimand, and reduction to E-1.

For Appellant:
*Kimberly D. Hinson*

For Appellee:
*Lieutenant Erin H. Bourneuf, JAGC, USN*
*Major Mary Claire Finnen, USMC*

Judge de GROOT delivered the opinion of the Court, in which Senior
Judge HARRELL and Judge GANNON joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

de GROOT, Judge:

Appellant was convicted, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ) and one specification of burglary, in violation of Article 129, UCMJ.[1]

Appellant raises two assignments of error: (1) whether Appellant's confession was the result of coercion and therefore involuntary; and (2) whether the military judge impermissibly restricted Dr. Sierra's testimony, barring testimony as to specific questions that Naval Criminal Investigative Service (NCIS) agents asked Appellant, thereby prejudicing Appellant. We find no prejudicial error and affirm.

## I. BACKGROUND

Lance Corporal (LCpl) M.R. alleged that Appellant sexually assaulted her in her barracks room.[2] As part of the investigation, Appellant was interviewed by NCIS Special Agent (SA) Charlie. LCpl M.R. got very drunk at a barracks room party. Appellant and two other Marines helped her back to her room. LCpl M.R. did not want to stay in the room, but eventually, she fell asleep. The two other Marines ensured LCpl M.R.'s windows and door were locked, and then all three Marines left. Appellant came back.

During his interrogation, Appellant stated he took LCpl M.R.'s key card from her table, which he used to enter the room later in the night to check on LCpl M.R. since she was so intoxicated, as her roommate texted him that she was not going to be returning that night. He stated that although he spent a

_____

[1] 10 U.S.C. §§ 920, 929. Appellant was acquitted of one specification of sexual assault and one specification of abusive sexual contact.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

while sitting on a chair at the foot of the bed, he eventually climbed into the bed with LCpl M.R. since he liked her. Appellant said he put his arm around her as she was sleeping on her side and rubbed LCpl M.R.'s upper leg and butt area. While Appellant does not remember touching her vulva, he said it is possible he touched her vulva as he was rubbing those areas. Although LCpl M.R. had said Appellant put his fingers inside her vagina, Appellant repeatedly said that he never did so. During the interrogation, Appellant talked about obtaining a lawyer both before and after waiving his right to counsel.

At trial, defense counsel made a motion to suppress Appellant's statement to SA Charlie. Appellant argued he did not knowingly and intelligently waive his right to counsel as he was not fully aware of this right as shown by his statements and questions regarding when he would get an attorney during his interrogation. Appellant claimed this confusion coupled with his level of suggestibility resulted in an involuntary waiver of his right to counsel.[3] Trial defense counsel presented evidence regarding Appellant's potential suggestibility to show that Appellant involuntarily waived his right to counsel.[4] The military judge disagreed and found based upon the totality of the circumstances that Appellant voluntarily, knowingly, and intelligently waived his right to counsel during his interrogation, and, consequently, found Appellant's statement to SA Charlie admissible.[5] Trial defense counsel did not make any further objections to the admissibility of Appellant's statement at trial.

At trial, the military judge allowed defense counsel to call Dr. Sierra, an expert, to testify regarding the science behind suggestibility, factors he considered and tests he conducted that show Appellant was suggestible when questioned by other persons, and to answer hypothetical questions to frame the issue for the members.[6] The military judge did not allow defense counsel to ask Dr. Sierra about specific questions asked during Appellant's interrogation.[7]

Additional facts necessary to resolve Appellant's AOEs are discussed below.

---

[3] Def. Mot. to Suppress Stm't., App. Ex. XXIV.

[4] R. at 216-90.

[5] App. Ex. LI, Section 5.

[6] R. at 1038.

[7] R. at 1037-38.

## II. DISCUSSION

### A. Appellant waived the suppression of his statement based on coercion by the NCIS agent.

Although waiver was not raised by either party, we find Appellant waived this issue when he did not make a "particularized objection" under Military Rule of Evidence (Mil. R. Evid.) 304(f)(1).

#### 1. Law

The Court of Appeals for the Armed Forces (CAAF) recently held in *United States v. Harborth* that "notwithstanding the presumption against waiver of constitutional issues, [a]ppellant waived challenging the duration of the seizure [of his devices] by failing to make a particularized objection to the duration at trial."[8] At trial, Harborth moved to suppress evidence from the search of his iPhone and seizure of his other devices based on lack of probable cause.[9] Neither Harborth nor the government argued at trial about the duration of the seizure of the devices, the government's delay in getting an approved command authorized search and seizure, or the speed and diligence of law enforcement.[10] On appeal however, Harborth argued the length of the seizure as an attack on probable cause. Mil. R. Evid. 311(d)(2)(A) states that suppression arguments not raised at trial are waived. "When an issue is waived, 'it is extinguished and may not be raised on appeal.'"[11] The CAAF found that Harborth "raised an entirely new ground for challenging a Fourth Amendment seizure . . . after any opportunity for the [g]overnment to explain or justify the delay had passed."[12]

Mil. R. Evid. 304(f)(1) contains the same language about waiver of an issue or objection as Mil. R. Evid. 311(d)(2)(A) cited in *Harborth.* Mil. R. Evid. 304(f)(1) states:

> Motions to suppress or objections under this rule or Mil. R. Evid. 302 or 305, to any statement or derivative evidence that has been disclosed must be made by the defense prior to submission of a plea. In the absence of such motion or objection,

---

[8] *United States v. Harborth*, __ M.J. __, 2025 CAAF LEXIS 436, at *10-11 (C.A.A.F. June 3, 2025).

[9] *Id.* at *9.

[10] *Id.*

[11] *Id.* at *10 (citing *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)).

[12] *Id.* at *12.

the defense may not raise the issues at a later time except as permitted by the military judge for good cause shown. Failure to so move or object constitutes a waiver of the objection.

We review de novo whether an issue has been waived.[13]

### 2. Analysis

Appellant made a motion at trial to suppress his statement made to SA Charlie, arguing Appellant's waiver of his right to counsel was involuntary.[14] Appellant's written motion, evidence presented, to include testimony, and oral argument presented at trial addressed Appellant's waiver of his right to counsel.[15] Appellant's main argument was that based on his suggestibility in accordance with Dr. Sierra's testimony during the Article 39(a) session, Appellant did not understand his *Miranda* rights and specifically his right to counsel, and his waiver of those rights was therefore involuntary, and not knowing or intelligent.[16] When determining whether an accused waived his or her rights, the test is whether the waiver was freely made, as well as being a knowing and intelligent waiver.[17]

On appeal, Appellant changed the argument for suppression stating more broadly that the entire statement was coerced and as a result was involuntary.[18] Appellant uses the factors laid out in *United States v. Bresnahan*, to argue that SA Charlie used coercive techniques throughout the interrogation, which, coupled with Appellant's suggestibility, overcame Appellant's will into confessing.[19] While there is some overlap with assessing the voluntary, knowing, and intelligent waiver and determining under a totality of the circumstances whether an appellant's confession was voluntary, by not including this

---

[13] *United States v. Blackburn*, 80 M.J. 205, 209 (C.A.A.F. 2020).

[14] App. Ex. XXIV.

[15] R. at 215-97.

[16] *Id.*

[17] Mil. R. Evid. 305(e)(1); s*ee United States v. Mott*, 72 M.J. 319 (C.A.A.F. 2013).

[18] Appellant's Brief at 33.

[19] Appellant's Brief at 33-59. In *United States v. Bresnahan,* 62 M.J. 137 (C.A.A.F. 2005), the CAAF looked to the totality of the circumstances to determine if the appellant's confession was voluntary by assessing factors such as the following: "the mental condition of the accused; his age, education, and intelligence; the character of the detention, including the conditions of the questions and rights warning; and the manner of the interrogation, including the length of the interrogation and the use of force, threats, promises, or deceptions." *Id.* at 141 (citation omitted).

argument at trial, trial counsel did not have the opportunity to create a record regarding the interrogation and the factors considered in *Bresnahan.*

Appellant also asserted on appeal that evidence derived from the involuntary statement, specifically evidence found during a search of Appellant's phone, was inadmissible as the request to search and subsequent permission given was a result of the involuntary statement.[20] This Court also finds that this new objection to the evidence found on Appellant's phone to be waived, as at trial, Appellant only argued that SA Charlie coerced Appellant into giving his consent to search his phone.[21] "Allowing [a]ppellant to assert this argument for the first time on appeal frustrates the purpose of the 'particularized objection' requirement as it prevents the [g]overnment from 'present[ing] relevant evidence on the objection' at trial."[22]

Accordingly, we find that Appellant waived the objection as to whether his statement was coerced and therefore involuntary.

## B. Appellant's statement was voluntary.

Even if we did not find that Appellant waived the issue of whether his statement was coerced, we would find the statement was voluntary.

### 1. Law

A confession is involuntary if it is "obtained 'in violation of the self-incrimination privilege or Due Process Clause of the Fifth Amendment to the United States Constitution, Article 31 or through the use of coercion, unlawful influence or unlawful inducement.'"[23] This Court reviews the voluntariness of a confession de novo.[24] "The prosecution bears the burden of establishing by preponderance of the evidence that the confession was voluntary."[25]

---

[20] Appellant's Brief at 60-61.

[21] App. Ex. XII. Specifically at trial, Appellant argued that by SA Charlie telling Appellant he would have to obtain a command authorization for search and seizure if Appellant did not give permission for NCIS agents to search his phone, which meant he may not get his phone back; that there were restrictions on his liberty during the interrogation; and that his not being able to speak to counsel prior to giving consent, Appellant involuntarily provided consent to search his phone. *Id.*

[22] *Harborth,* 2025 CAAF LEXIS at *13 (citing *United States v. Bavender,* 80 M.J. 433, 436 (C.A.A.F. 2021)).

[23] *United States v. Lewis,* 78 M.J. 447, 453 (C.A.A.F. 2019); *see also United States v. Freeman,* 65 M.J. 451, 453 (C.A.A.F. 2008).

[24] *Bresnahan,* 62 M.J. at 141.

[25] *Freeman,* 65 M.J. at 453.

"Voluntariness turns on whether an accused's 'will has been overborne.'"[26] In *Bresnahan*, the CAAF, in assessing the totality of the circumstances, looked at factors such as: "mental condition of the accused; his age, education, and intelligence; the character of the detention, including the conditions of the questioning and rights warning; and the manner of the interrogation, including the length of the interrogation and use of force, threats, promises, or deceptions."[27] The CAAF found that despite the pressure the appellant was feeling due to the untimely death of his infant son, there was no evidence that the appellant suffered from low intelligence or mental deficiency.[28] Further, he was cooperative with law enforcement, was not under arrest or constrained, was not detained for a long period of time, and was told he could terminate the interview at any time.[29] Further, despite the detective telling the appellant that the doctors needed to know what happened to his infant, this statement "may have contributed to his confession, [but] the mere existence of a causal connection does not transform [a]ppellant's otherwise voluntary confession into an involuntary one."[30]

### *2. Analysis*

In this case, we assess Appellant's statement using the *Bresnahan* factors as stated above.[31]

Although Dr. Sierra found Appellant to be suggestable, the military judge found there was no evidence that Appellant was of low intelligence, lacked education, or had an "an appreciable deficiency in the English language."[32] We concur with the military judge that Appellant's discussion with SA Charlie was "articulate and intelligent," and there is no evidence in the record to show that Appellant was suffering any type of mental condition at the time of the interrogation.[33]

---

[26] *Lewis*, 78 M.J. at 452-53 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)).

[27] *Bresnahan*, 62 M.J. at 141.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 142 (quoting *United States v. Ellis*, 57 M.J. 375, 379 (C.A.A.F. 2002)).

[31] *See id.* at 141.

[32] App. Ex. LI at 6. This Court reviewed Prosecution Exhibit 4 and enclosures 1 and 2 of Appellate Exhibit XXII, which is the video of Appellant's interrogation, as well as Prosecution Exhibit 12, which is Appellant's Official Military Personnel File. The Court also reviewed the testimony of Dr. Sierra. R. at 1041–125.

[33] App. Ex. LI at 6.

Appellant contends SA Charlie used psychologically coercive interrogation techniques in his interrogation, resulting in an involuntary statement.[34] We disagree. At the beginning of the interrogation, SA Charlie ensured Appellant knew that he did not have to be there and could leave at any time with the only restriction being he had to be released to an escort.[35] There were breaks from questioning during the interrogation which lasted a little over two hours, and Appellant was asked if he needed to use the restroom.[36] While SA Charlie asked questions and pressed Appellant, he did not use force, threats, promises or deceptions in a manner that overcame Appellant's will. When confronted with LCpl M.R.'s recollection of Appellant putting his fingers in her vagina, Appellant had no issue with denying her allegation several times, and he refused a polygraph.[37] While SA Charlie challenged Appellant several times on Appellant's answer to his questions, none of these questions rose to the level of threats or deception to overcome Appellant's will.

Even if we did not find that Appellant waived the issue of whether his statement was coerced, we would find the statement was voluntary.

## C. The military judge did not abuse his discretion when he limited Dr. Sierra's testimony.

### 1. Standard of review

We review the military judge's ruling on the admissibility of expert testimony for an abuse of discretion.[38] Military judges abuse their discretion (1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable.[39] "[T]he abuse of discretion standard of review recognizes that a judge has a wide range of choices and will not be reversed so long as the decision remains within that range."[40]

---

[34] Appellant's Brief at 45.

[35] Pros. Ex. 4; App. Ex. XXII, encl. 1.

[36] Pros. Ex. 4; App. Ex. XXII, encl. 2.

[37] App. Ex. XXII, encl. 2.

[38] *United States v. Dougherty*, 2013 CCA LEXIS 1072 (N-M. Ct. Crim. App. 2013) (unpublished).

[39] *Id.*

[40] *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010).

An expert witness "may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ."[41] In *United States v. Dougherty*, this Court found an abuse of discretion in the military judge's denial of a defense request for expert assistance in false confessions when: tests and a report had already been completed by the requested expert; the military judge incorrectly ruled that the appellant must first put on evidence that his confession was false before challenging the credibility of his confession; and, the military judge's Mil. R. Evid 403 analysis was an unreasonable application of correct legal principles to the specific facts.[42]

### 2. Analysis

In this case, unlike in *Dougherty*, the military judge recognized Dr. Sierra's expertise and allowed Dr. Sierra to testify as to Appellant's level of suggestibility.[43] The military judge found there was "insufficient scientific consensus or statistical quantifiable reliability to make [the] opinion, given all the variables that go into play in an interrogation such as tone, language used, environmental factors, and subjective factors by the person being interviewed," that Appellant answered falsely or that it was suggested to him to answer falsely.[44] The military judge went on to find that members might more likely accept as fact that a specific question suggested an answer and Appellant's answer as false based on Dr. Sierra's designation as an expert vice their own understanding of the science of suggestibility which they would get from listening to Dr. Sierra's testimony.[45] The military judge completed a Mil. R. Evid. 403 balancing test. The military judge found that allowing Dr. Sierra to testify about whether specific questions SA Charlie asked Appellant were, in Dr. Sierra's opinion, unduly suggestive, or to allow Dr. Sierra to opine that one or more of

---

[41] Mil. R. Evid. 702.

[42] *Dougherty*, 2013 CCA LEXIS 1072, at *17-19.

[43] R. at 1036.

[44] R. at 1037. During the Article 39(a) session to address the motion to suppress Appellant's statement, when asked specifically about the Standardized Assessment of Miranda Abilities test, whether or not someone could score so poorly on the test that they could be found incapable of waiving *Miranda* rights, Dr. Sierra said he could not and it was a legal question reserved for the trier of fact. R. at 243. Dr. Sierra testified that he provides the science and "probability statements and measures that are then presented for the Court to consider." *Id.* These statements are in line with the military judge's finding of fact: whether someone is so suggestible that his answers are false, or caused someone to answer falsely, the science is not clear.

[45] R. at 1037.

Appellant's responses was actually false, would have minimal probative value.[46] This minimal probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, waste of time, and needless presentation of cumulative evidence.[47] The military judge allowed defense counsel to ask "hypothetical questions about types of questions or techniques that may suggest or cause somebody who is prone to suggestibility to answer in a particular way."[48] This permitted Appellant to present his theory of suggestibility, not unduly prejudice trial counsel's case, and not invade "the providency of the members as the fact finder and ultimate evaluator of the truth of a statement."[49]

We find the military judge found facts that were supported by the record, he applied the correct legal principles to the facts in this case, and the application was reasonable. Therefore, we find the military judge did not abuse his discretion in limiting the testimony of Dr. Sierra.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[50]

The findings and sentence are **AFFIRMED**.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[46] R. at 1037.

[47] R. at 1037-38.

[48] R. at 1038.

[49] R. at 1038.

[50] Articles 59 & 66, UCMJ.